Edgar E. OLIVER, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT and Jim Smith, Respondents-Appellees.

Nos. 84–5821, 84–5911.

United States Court of Appeals, Eleventh Circuit.

Aug. 11, 1986.

Margaret S. Brodsky, Miami, Fla., for petitioner-appellant.

Davis G. Anderson, Asst. Atty. Gen., Tampa, Fla., and Calvin L. Fox, Asst. Atty. Gen., Miami, Fla., for respondents-appellees.

Before FAY, CLARK and NIES *, Circuit Judges.

PER CURIAM:

Edgar Oliver appeals from the denial of his petition for habeas corpus on the ground that his ineffective assistance of counsel claim is barred by his procedural default during Florida post-conviction proceedings and that his prosecutorial misconduct claims lack merit. We affirm the denial with respect to Oliver's ineffective assistance of counsel claim, but for reasons other than those advanced by the district court. We also affirm the denial with re-

spect to the prosecutorial misconduct claims.

## I. FACTS

On April 30, 1975, Oliver was convicted in the Twentieth Judicial Circuit Court of Florida of first degree murder. He was later sentenced to life in prison. Oliver appealed his conviction to Florida's Second District Court of Appeal ("Second DCA"),[1] which issued a per curiam summary affirmance on February 6, 1976.

In July of 1976, Oliver instituted his first request for collateral post-conviction relief by filing a pro se motion to vacate, set aside or correct his sentence pursuant to Fla.R.Crim.P. 3.850 ("3.850 motion") in the Twentieth Judicial Circuit Court of Florida. As grounds for his motion, he questioned the sufficiency of the evidence against him and the prosecutor's alleged attempt to influence the testimony of defense witnesses by threatening prosecution for perjury. His motion was denied, and this denial was summarily affirmed by the Second DCA. Oliver's petition to the Florida Supreme Court for a writ of habeas corpus (apparently raising the same grounds for relief) was denied in September, 1977.

Oliver next filed a motion for post-conviction relief pursuant to 28 U.S.C. § 2254 in the United States District Court for the Southern District of Florida in December, 1977. He raised the same arguments that had been presented in his 3.850 motion as well as a few new theories, including an ineffective assistance of counsel claim. This petition was dismissed for failure to exhaust state remedies. Oliver's appeal from the dismissal was itself dismissed for failure to prosecute because Oliver never filed an appellate brief. The United States Supreme Court declined to grant *certiorari.*

---

* Honorable Helen W. Nies, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. On direct appeal, Oliver challenged the sufficiency of the evidence, the prosecuting attorney's alleged attempt to influence the testimony of defense witnesses by threatening them with prosecution for perjury, the trial court's denial of Oliver's motions for dismissal of the indictment and for judgment of acquittal and the trial court's decision to sustain an objection to unspecified remarks by defense counsel during closing argument.

In May, 1980, Oliver filed his second 3.850 motion pro se in Florida circuit court, commencing the state processes leading to the § 2254 petition at issue on this appeal. In this motion he alleged he was denied the effective assistance of counsel by virtue of his trial attorney's failure (1) to challenge identifications central to the state's case, (2) to challenge the jury composition (apparently on racial grounds), (3) to investigate certain unspecified facts and (4) to object to certain statements made by the prosecutor in closing argument. He also argued that he was denied due process of law by the prosecutor's improper statements in closing argument. He specifically objected to twenty-three quoted statements that included (1) references to Oliver's prior criminal activity, (2) a suggestion that Oliver suborned perjured testimony from his alibi witnesses, (3) the (allegedly false) assertion that Oliver supported the child of one of his alibi witnesses and (4) remarks about the keen powers of observation of prosecution witness Sergeant Charlie Sanders.

The trial court appointed counsel and held a hearing at which witnesses testified only with respect to the issue whether Oliver's trial counsel failed effectively to challenge the identifications of prosecution witnesses. The court orally denied Oliver's motion at the close of the hearing, which took place on October 13, 1980. Although the denial was recorded in the court's minute book, it was never otherwise recorded. Oliver never received written notice of the denial informing him of his appeal rights as is required by Rule 3.850.

Appointed counsel informed Oliver that he had thirty days to appeal the denial of his motion and declined to represent Oliver on appeal. Acting pro se, Oliver mailed a "Petition for Writ of Habeaus [sic] Corpus" to the Second DCA on November 12, 1980. It was filed with the clerk of that court on November 18, 1980. This petition raised the same arguments that had been presented to the trial court and stated that his motion for post-conviction relief had been

denied on October 13, 1980. On November 20, 1980, 392 So.2d 78, the Second DCA denied the petition without opinion. Oliver attempted to appeal this denial by filing a petition for writ of habeas corpus with the Florida Supreme Court. This petition was denied in January, 1981.

Oliver filed his second § 2254 petition in the Southern District of Florida, raising the same grounds for relief that had been raised throughout his second quest for post-conviction relief in the Florida courts. The district court again determined that Oliver had failed to exhaust his state post-conviction remedies and dismissed the petition without prejudice.

The district court reasoned that the Second DCA must have denied Oliver's petition/appeal pursuant to the following language of Rule 3.850:

> An application for writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this rule, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

The court concluded that Oliver's allegations "on appeal" were never considered on the merits. The court noted that Florida decisional law provides a mechanism for requesting a "belated" appeal on the ground the appellant's right to appeal has been frustrated by state action. In *Baggett v. Wainwright*, 229 So.2d 239 (Fla. 1969), the court held that relief from an alleged deprivation of the right to appeal may be sought through a petition for habeas corpus to the district court of appeal empowered to grant ultimate relief in the matter in which appeal has been frustrated. The district court directed Oliver to petition for a belated appeal pursuant to *Baggett* to exhaust his state remedies.

Oliver did petition the Second DCA for a belated appeal. The commissioner [2] appointed to investigate the facts relevant to the petition issued a report on May 4, 1984 finding that Oliver had access to the materials necessary to appeal from the October 13, 1980 denial of his second 3.850 motion and was aware that he had thirty days to appeal. Assuming the petition for writ of habeas corpus could be treated as a notice of appeal, the commissioner concluded it was nevertheless not timely filed. As Oliver's right to appeal had not been denied, the commissioner recommended that Oliver's petition for belated appeal be rejected. The Second DCA accordingly denied the petition on May 8, 1984.

Back in federal district court after successfully petitioning the court to reinstate his petition for habeas corpus, Oliver found his petition submitted to a magistrate, who recommended that the petition be denied. With respect to the ineffective assistance of counsel claim, the magistrate found consideration on the merits to be barred by Oliver's failure timely to appeal the denial of his second 3.850 motion. The magistrate found that the state court "imposed a procedural default" when it "ruled, after an evidentiary hearing [on Oliver's *Baggett* petition], that Petitioner had not timely filed his appeal and had not been hindered in any way from doing so" and reasoned that it must defer to the state court's ruling on procedural default absent a showing by Oliver of cause for the default and prejudice from the court's failure to reach the merits, citing *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Finding no cause for the late filing, the magistrate concluded that he was not free to review the merits of the ineffective assistance claim.

Without explaining why Oliver's prosecutorial misconduct claim would not similarly be barred, the magistrate proceeded to ad-

dress the merits of that claim. The magistrate dismissed most of the challenged remarks as not colorably improper. Addressing the statements about Sergeant Sanders, the magistrate found they did not amount to an expression of the prosecutor's opinion, a personal attestation to the credibility of a witness, or an implication that extra-record evidence supported the state's case. They were not, therefore, improper. The magistrate also concluded that the evidence linking Oliver to the murder, apart from Sanders' testimony, was "strong," implying that any impropriety was not prejudicial.

The district court adopted the magistrate's report and recommendation and dismissed Oliver's petition.[3] Oliver filed notice of appeal from the denial, and we appointed counsel to represent Oliver before this court.

## II. ISSUES

On appeal from the denial of his ineffective assistance claim, Oliver asks us to find that no procedural default occurred under Florida law and argues, in the alternative, that he meets the cause and prejudice requirements of *Wainwright v. Sykes.* As for the prosecutorial misconduct claim, Oliver argues that the prosecutor's remarks were improper and prejudicial and so violated his right to a fair trial. We conclude that *Wainwright v. Sykes* should not be applied in the peculiar circumstances of this case and affirm the denial of Oliver's petition on the ground his claims lack merit.

## III. ANALYSIS

### A. *Applicability of Wainwright v. Sykes to Procedural Default during State Collateral Proceedings*

The district court's disposition of this claim raises the novel question whether the

**2.** The commissioner in this case was the trial judge who had first denied Oliver's second 3.850 motion.

**3.** Rather than objecting to the magistrate's report and recommendation, Oliver attempted to appeal from it. The district court treated the

notice of appeal as a categorical objection to the magistrate's report and recommendation. This "appeal" was erroneously docketed and assigned Case No. 84–5821. We now dismiss the appeal designated by that number. Our opinion and decision pertain only to Case No. 84–5911.

reasoning of *Wainwright v. Sykes* requires a federal habeas court to defer to a state court's refusal to consider the merits of a federal constitutional claim presented in a request for collateral relief from conviction where the refusal is based on the petitioner's failure to comply with state procedural rules during state collateral post-conviction proceedings. For the reasons that follow, we believe it would be inappropriate for us to reach this issue in the context of this case. We therefore reach the merits to affirm the denial of Oliver's petition with respect to this claim.

In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that a state court's determination that it must refuse to consider the merits of a criminal defendant's federal constitutional claim because the defendant has failed to comply with a state contemporaneous-objection rule is an independent and adequate state ground for denying relief that is immune from federal review absent a showing of cause for the noncompliance and prejudice from the refusal to reach the merits. *See also Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1981). In *Ford v. Strickland*, 696 F.2d 804, 816 (11th Cir.1983) (en banc), this court explained that the rationale of *Sykes* also applies to procedural default committed during the direct appeal stage of state proceedings. We expressly reserved the question whether *Sykes* should be applied in the context of procedural default committed during state collateral proceedings in *Francis v. Spraggins*, 720 F.2d 1190, 1192 n. 3 (11th Cir.1983), noting that "extension of the doctrine to this type of case would be unprecedented in our decisions and in those of the Supreme Court, and would raise serious policy questions perhaps best left to Congress."

Although it appears that the question remains open, the district court in this case deferred to the Florida court's application of a procedural bar that arose during state collateral proceedings without analysis or giving reasons. Because it is not clear whether the Second DCA did in fact rely on a procedural bar to deny Oliver's attempted appeal and because any procedural bar in this case appears not to have been an "adequate" state ground for refusing to reach the merits, we again avoid consideration of the applicability of *Sykes* to procedural default committed during state collateral post-conviction proceedings.

Either of two procedural grounds might have formed the basis for the Second DCA's November 20, 1980 denial of Oliver's habeas corpus petition. The first is that Oliver filed a petition for writ of habeas corpus rather than a notice of appeal with that court, which is an appellate court. The Second DCA might have reasoned, as the district court speculated when it sent Oliver back to state court to request a belated appeal, that such a petition should be denied under the Rule 3.850 requirement that motions for post-conviction relief initially be filed in the sentencing court, not in the appellate court. Second, the Second DCA might have treated the petition as a notice of appeal from the trial court's denial of Oliver's 3.850 motion but denied it as untimely filed. This approach was taken by the commissioner upon Oliver's motion for belated appeal.

Our problem is that the Second DCA did not explain its decision; it merely stated:

Petitioner, pro se, having filed a Petition for Writ of Habeas Corpus, upon consideration, it is

ORDERED that said Petition for Writ of Habeas Corpus is hereby denied.

It may be, for all we can tell from this language, that the Second DCA treated the petition as an appeal and denied it for lack of merit and not for noncompliance with a procedural rule.

 The lack of explanation is significant because federal review is not barred by the defendant's violation of a state procedural rule if the state court has overlooked the possible procedural bar and decided the case on the merits. *See, e.g., Campbell v. Wainwright*, 738 F.2d 1573, 1576–77 (11th Cir.1984). Where, as here, the state court might have invoked a procedural bar but has provided no indication

that it did so, "a federal court must address the merits" of the petitioner's claim. *Id.* at 1577. If the state court does not "indicate that a federal constitutional claim is barred by some state procedural rule, a federal court implies no disrespect for the State by entertaining the claim." *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 154, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). Given the absence of any explanation for the Second DCA's denial, the district court should not have assumed it rested on procedural default but should have addressed the merits of Oliver's petition.

The fact that the Second DCA determined, in response to Oliver's petition for a belated appeal, that his attempted appeal had been untimely filed and not frustrated by state action does not tell us that the court did not deny the petition/appeal on the merits in the first instance. The commissioner did not find that the Second DCA had relied on procedural default to deny the petition/appeal but found that unjustified procedural default barred Oliver from receiving a new appeal. This finding tells us only that there existed a procedural ground on which the court *might* have relied to refuse to hear the merits in the first instance. As the untimeliness argument was advanced by the state's attorney's for the first time in response to Oliver's petition for belated appeal, we have no reason to believe it actually formed the basis for the summary denial.[4]

 There is a second reason that we should reach the merits of Oliver's claims.

Even were *Sykes* to apply, we could not defer to the state court's rejection of Oliver's constitutional claim unless it were based on an "independent and adequate" state ground. *Allen, supra; Spencer v. Kemp,* 781 F.2d 1458, 1469 (11th Cir.1986) (en banc). Where the state applies its procedural bar only sporadically or the defendant could not fairly be deemed to have been apprised of the existence of the procedural rule, a federal court may entertain a petition for the writ. *Spencer,* 781 F.2d 1470 (citing cases). In this case, the only state ground for refusing to consider the merits of Oliver's federal constitutional claims addressed by a state court—untimeliness—is inadequate.[5]

Had the Second DCA and the commissioner correctly applied Florida law, they would have found that the thirty-day period for filing an appeal from the trial court's denial of Oliver's 3.850 motion had never begun to run. Fla.R.App.P. 9.110(b) provides that a notice of appeal must be filed within thirty days of "rendition" of the order to be reviewed. *See also* Fla.R.Crim.P. 3.850 (directing that all orders denying motions for post-conviction relief shall include notice of right to appeal within thirty days of "rendition" of the order). Rule 9.020(g) defines "rendition" as "the filing of a signed, written order with the clerk of the lower tribunal." There is no dispute that the only written record of the trial court's denial of Oliver's 3.850 motion is a minute book entry, which is not an order, let alone rendition of an order. Fla.R.App.P. 9.020(e). Thus, the act triggering

---

**4.** No state court has found that Oliver committed procedural default when he filed a habeas petition rather than a notice of appeal with the Second DCA. The federal district court merely speculated that such a default had occurred when it sent Oliver back to the state system to seek a belated appeal. The state commissioner who held the belated appeal hearing assumed that the petition could be treated as a notice of appeal in his discussion of the timeliness problem. The state has treated the petition as a notice of appeal throughout the proceedings on Oliver's current § 2254 motion. As we have been given no reason to believe that Oliver committed procedural default under state law by filing a "petition" instead of a "notice of

appeal," we will give no weight to the district court's speculation on that score. Because the state has treated the petition as a notice of appeal before the federal courts and has not argued that failure to file a notice of appeal constitutes failure to exhaust state remedies, we do not consider there to be any exhaustion issue in this case.

**5.** As no state court has held that the form of the document noticing Oliver's appeal violated state procedural rules, thereby raising a procedural bar, we need not address the possible adequacy of that state ground for refusing to hear a federal constitutional claim.

the thirty-day filing period has never occurred.

In *Williams v. State,* 324 So.2d 74 (Fla. 1975), the Florida Supreme Court explained that the purpose of Rule 9.020(g) is to set a uniform point from which timing requirements can be measured. In that case, the court held that a notice of appeal filed prior to rendition should not be dismissed but must be held by the clerk until the notice matures upon rendition of the order. The same procedure should have been followed by the Second DCA in this case. Oliver's "notice" of appeal, premature because filed prior to rendition, should have been held until it matured.

■ Thus, if the Second DCA indeed denied Oliver's petition as untimely, it erred under Rule 9.020(g) because no order of denial had been rendered to trigger the thirty-day period. If it denied the petition on the ground it was prematurely filed, it erred under *Williams.* Either way, its decision would have seemed an unfair surprise to anyone familiar with Florida law. The elements of inconsistent application of state law and unfair surprise render any decision that Oliver's petition/appeal was untimely inadequate to bar federal review of Oliver's constitutional claims. *Spencer,* 781 F.2d at 1470–71.

Because the state court did not indicate that it was applying a procedural bar in denying Oliver's petition/appeal and because any procedural basis upon which the state court might have relied to refuse to reach the merits of Oliver's claims is not adequate to foreclose federal review of those claims, we need not decide whether to extend *Sykes* to procedural default that occurs during state collateral proceedings. Instead, we go on to address the merits of Oliver's ineffective assistance and prosecutorial misconduct claims.

### B. *Ineffective Assistance of Counsel*

Oliver argues that his trial counsel rendered ineffective assistance when he failed (1) to challenge identifications central to the state's case, (2) to challenge the jury composition as racially discriminatory, (3) to investigate certain (unspecified) facts and (4) to object to the comments during the state's closing argument that form the basis for Oliver's prosecutorial misconduct claim. To demonstrate that his counsel's assistance was so defective as to require reversal of his conviction, Oliver must show that his attorney made such serious errors that he was not acting as "counsel" within the meaning of the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). He must further demonstrate prejudice from the errors amounting to deprivation of a fair, reliable trial. *Id.* We cannot say that the assistance rendered by Oliver's counsel fell below an objective standard of reasonableness and so affirm the denial of Oliver's § 2254 petition insofar as it relies upon claims of ineffective assistance of counsel. *Id.* at 2064–65.

■ Oliver first complains that his counsel failed to challenge the three identifications through which the state placed Oliver at the murder scene. We point out that defense counsel did not neglect to call weaknesses in the identifications to the attention of the jurors. Through cross-examination and during closing argument, counsel brought out that each witness had seen the person identified as Oliver for only a few seconds six months prior to the identifications, that one witness had previously identified that person as a 5'8" woman (Oliver is 6'2" and male), that Sergeant Sanders had transported Oliver for some distance after his arrest and so had an opportunity to connect Oliver with the murder before making the identification, and that the witnesses could not describe the other men they saw with Oliver. Defense counsel pointed out additional weaknesses and inconsistencies, too numerous to list here, in the identification witnesses' testimony. Moreover, Oliver's counsel put on an alibi defense to raise doubts in the jurors' minds whether Oliver could have been the person seen at the sight of the murder.

Counsel did not use "imaginative trial techniques" to make identification more

difficult, such as seating several other "defendants" at counsel's table or holding an in-court line-up, as Oliver now argues he should have done. Given the fact that trial counsel vigorously contested the credibility of the witnesses who identified Oliver, it is evident that counsel's decision to attack the credibility in the way he did was a matter of sound trial strategy and not unreasonable under the circumstances. *Strickland,* 104 S.Ct. at 2066. We cannot require defense counsel to choose one particular defense strategy over any other strategy that falls within the "wide range of professionally competent assistance." *Id.* Oliver therefore fails to make out the first prong of *Strickland* and so his ineffective assistance claim with respect to identifications must be denied.

■ As for Oliver's claim that his counsel failed to challenge the racial composition of the jury, we point out that Oliver does not allege that the jury pool or the traverse jury was discriminatorily selected. Rather, he appears to argue that an attorney who represents a black defendant must always raise the issue of systematic exclusion of blacks from juries or be considered to have rendered ineffective assistance. He does not allege specific facts to show that blacks were systematically excluded in his case but states only that "[t]his factor has been the subject of expansive judicial notice in connection with the persistent failure of white southern lawyers to contest the systematic exclusion of Negroes from juries." Record at 31. Oliver's allegations fail to state any constitutional claim and his petition is due to be denied insofar as the jury composition claim is concerned.

■ Oliver's two remaining ineffective assistance claims are also without merit. His allegation that his attorney failed to investigate facts merely states the general principles of law on the subject without making specific reference to any deficiency in Oliver's defense. His vague assertions fail to state any constitutional claim and do not warrant further consideration. His claim that trial counsel's failure to object to the prosecution's closing statements amounted to ineffective assistance is due to be denied because, as we explain in the discussion of Oliver's prosecutorial misconduct claim below, the prosecutor's comments do not require reversal. Oliver therefore cannot meet the prejudice prong of *Strickland.*

### C. *Prosecutorial Misconduct*

Oliver argues that he was denied due process of law by the prosecutor's improper statements in closing argument. Although Oliver objected to twenty-three quoted excerpts from that argument in his petition, he focuses on the following four areas of alleged impropriety on appeal: (1) references to Oliver's prior criminal activity, (2) a suggestion that Oliver suborned perjured testimony from his alibi witnesses, (3) the (allegedly false) assertion that Oliver supported the child of one of his alibi witnesses and (4) remarks about the keen powers of observation of prosecution witness Sergeant Charlie Sanders. The district court reached the merits of the prosecutorial misconduct claim and found that the challenged statements were not improper. We affirm.[6]

■ Oliver first objects to the following statement in the prosecutor's closing argument: "As to motive, three of them did have prior criminal activity." Trial Transcript at 299. Oliver himself testified on direct examination that he had previously pled guilty to receiving stolen property. He admits that the prosecution could have used this information to comment on Oliver's credibility, but argues it was improper to use it to insinuate that Oliver had a propensity to commit crime.

---

6. The magistrate, whose report and recommendation were adopted by the district court, did not explain why it did not apply *Sykes* to defer to the state court's finding of procedural bar with respect to this claim as well as to the ineffective assistance claim. No reason for this difference in treatment appears in the record. For the reasons given in Part A, *supra,* we also reach the merits of this claim.

We agree that Oliver's previous criminal record was irrelevant to the question of his motive for the murder at issue in this case. However, we do not see how Oliver could have been prejudiced by the prosecutor's cryptic attempt to link his record to motive. Oliver has made no argument that he suffered additional prejudice from the reference to motive that could not be attributed to the initial introduction of the evidence of his past illegal conduct. As that evidence was placed before the jury by Oliver, he cannot now complain that his trial was rendered fundamentally unfair[7] by the prosecutor's peculiar reference to it.

Oliver's second charge of misconduct relates to the following comments made by the prosecutor during closing argument:

> The defendant in this case has endeavored to establish a defense of alibi. He brought into this Courtroom two witnesses who he had hopes would establish this alibi or corroborate his story. Remember, [Oliver] was released from jail December 27th and wasn't arrested again until February 4th. This is certainly an adequate period of time for him to contact, as he stated, almost on a daily basis, these witnesses to discuss with them the statements he has made.

Trial Transcript at 278. Oliver argues that this language suggests he suborned perjured testimony on the part of his alibi witnesses.

■ To the extent the prosecutor did suggest that Oliver attempted to influence his witnesses to lie, his comments were improper. While a prosecutor may point out that record evidence suggests that a witness may have had some reason to testify as the defendant wished, he or she may not suggest that the defendant has suborned perjury where such a suggestion finds no support in the record. Although the prosecutor merely insinuated that Oliver had the opportunity to influence the testimony of defense witnesses, we think such veiled hints to be beyond the scope of proper argument.

However, Oliver's alibi defense was so weak and full of inconsistencies that the prosecutor's insinuation could not have rendered the trial fundamentally unfair. Oliver and his two alibi witnesses each placed Oliver at his girlfriend's home at different times. One witness, the girlfriend's mother, was impeached with her own deposition testimony (the particulars of which she denied having given). Oliver's testimony was vague. Given the inconsistency and vagueness of the defense, the jury could have disbelieved the alibi testimony altogether or believed that Oliver spent the afternoon of the murder with his girlfriend but that he arrived there after having committed the murder. There was simply no need to discredit the alibi witnesses by suggesting they had lied at Oliver's behest. The jury already had ample reason to discount their testimony. We therefore deny Oliver's petition insofar as this facet of his prosecutorial misconduct claim is concerned.

■ Oliver's third charge of misconduct concerns the prosecutor's bald assertion that Oliver supported his girlfriend's child, apparently to suggest that the girlfriend had reason to testify on Oliver's behalf. As Oliver points out, this assertion is not supported by the record. Nonetheless, because Oliver had already testified that his support extended only to providing baby food every once in a while, the jury had the

---

7. In *Tucker v. Kemp*, 762 F.2d 1496 (11th Cir. 1985) (en banc), we explained that in determining whether improper argument renders a trial fundamentally unfair so as to require habeas corpus relief, the court should ask whether there is a reasonable probability that, in the absence of the offending remarks, the outcome would have been different. *Id.* at 1504 & n. 11. The Supreme Court has vacated that decision for reconsideration in light of *Caldwell v. Mississippi*, —— U.S. ——, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). As this court has not yet issued its decision on reconsideration, it is not clear whether the *Tucker* standard for assessing the effect of improper remarks on the fairness of a trial will stand. Our decision that Oliver's trial was not rendered fundamentally unfair by any improper comments by the prosecutor rests on the premise that the potential prejudice to Oliver from the comments was so minimal that his trial could not be found to have been "fundamentally unfair" under any interpretation of that term.

information necessary to qualify the prosecutor's assertion. To the extent the comment may be read to suggest that the prosecutor had access to extra-record evidence, it was harmless for the reasons given above; the girlfriend's credibility was properly subjected to extensive attack on other fronts.

Finally, we reach the contention that the prosecutor improperly suggested that Sergeant Sanders' powers of observation were particularly acute due to his experience as a law enforcement officer. As the district court found, the prosecutor was merely drawing permissible inferences from the evidence of Sanders' experience and training contained in the record. We find nothing improper in commenting that the superior knowledge of a trained observer makes the witness more worthy of credence. Having determined that this and the other claims of prosecutorial misconduct do not warrant reversal of Oliver's conviction, we conclude that the prosecutorial misconduct portion of Oliver's § 2254 petition was properly denied.

For the foregoing reasons, we affirm the denial of Oliver's petition for writ of habeas corpus.

AFFIRMED.