William Boyd TUCKER,
Petitioner-Appellant,

v.

Ralph KEMP, Warden, Georgia
Diagnostic and Classification
Center, Respondent-Appellee.

No. 87-8357.

United States Court of Appeals,
Eleventh Circuit.

May 26, 1987.

Robert B. Remar, Remar and Graettinger, P.C., Atlanta, Ga., for petitioner-appellant.

William B. Hill, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT, HATCHETT and ANDERSON, Circuit Judges.

v.

Ralph KEMP, Warden, Georgia
Diagnostic and Classification
Center, Respondent-Appellee.

No. 87-8357.

United States Court of Appeals,
Eleventh Circuit.

May 27, 1987.

Robert B. Remar, Remar and Graettinger, P.C., Atlanta, Ga., for petitioner-appellant.

William B. Hill, Jr., Asst. Atty. Gen., Atlanta, Ga., for respondent-appellee.

Before TJOFLAT, HATCHETT and ANDERSON, Circuit Judges.

PER CURIAM:

The petitioner is a Georgia death row inmate; his execution has been scheduled to take place on Wednesday, May 27, 1987, at 7:00 p.m. He seeks a certificate of probable cause, and a stay of his execution, so that he can appeal the order of the district court entered on May 14, 1987, denying him habeas corpus relief. On May 26, 1987, after hearing oral argument of counsel, we entered an order, 819 F.2d 978, denying the requested certificate of probable cause and stay, stating that an opinion would issue on May 27, 1987, citing the reasons for our action.

This is petitioner's second federal habeas corpus petition. He filed his first petition in the district court on January 28, 1982; the court denied it on January 26, 1983. We affirmed the denial on May 31, 1985, *Tucker v. Kemp*, 762 F.2d 1480 (11th Cir.) (en banc), *vacated*, —— U.S. ——, 106 S.Ct. 517, 88 L.Ed.2d 452 (1985). The Supreme Court granted petitioner's application for a writ of certiorari on December 2, 1985, and remanded the case for reconsideration in light of *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Upon reconsideration, we affirmed the district court's denial of habeas relief, on October 30, 1986. *Tucker v. Kemp*, 802 F.2d 1293 (11th Cir.1986) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 1359, 94 L.Ed.2d 529 (1987).

Petitioner presents two claims for relief in his present petition. First, petitioner contends that his trial judge violated the Constitution by giving the jury a mandatory rebuttable presumption instruction on the issue of intent, thus shifting the burden of proof on that issue to him. Petitioner bases this claim on *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). Second, petitioner contends that the composition of his traverse jury pool denied him rights guaranteed by the fifth, sixth, eighth, and fourteenth amendments in that there was an "absolute disparity between the percentage of blacks in Muscogee County [from which the pool was drawn] and their presence in the traverse jury pool of 14.62%." * According to petitioner, who is white, this disparity resulted from a systematic exclusion of blacks from the jury list by those responsible for the maintenance of the list in Muscogee County.

In its response to the instant petition, the State urged the district court to dismiss the petition pursuant to Rule 9(b), "Successive Petitions," Fed.R. Governing Sec. 2254 Cases, *see* 28 U.S.C. § 2254 (1982), arguing that petitioner was seeking "to litigate new and different grounds for relief never heretofore presented to the district court" and that petitioner's "eleventh hour" presentation of these new claims constituted an abuse of the writ. The district court agreed and dismissed the petition.

Petitioner concedes that his first claim, based on *Franklin*, is a new claim, one not

---

* Petitioner also contends that women were underrepresented in his traverse jury pool. This claim is subject to the same deficiencies as his claim that blacks were underrepresented.

In the instant petition, petitioner also challenged, on the same constitutional grounds, the pool from which his grand jury was selected, contending that women and blacks were underrepresented. He alleged an absolute disparity of 40.64% for women and an absolute disparity of 12.57% for blacks. Petitioner dropped his challenge to the grand jury pool in the district court. In its dispositive order of May 14, 1987, the court wrote: "Petitioner has deleted his challenge to the composition of his grand jury pool."

previously raised and litigated on the merits. In paragraph 9h of his petition, petitioner, in an effort to excuse his failure to raise the claim in his first habeas petition, alleged that the claim "could not reasonably have been raised in his original Petition and therefore had not been waived." In support of this allegation, he proffered the affidavits of his co-counsel, Robert B. Remar and Eric G. Kocher (which appear as parts of Exhibit A to the instant petition), which in pertinent part state, identically, the following:

> At the time we filed the original petition for writ of habeas corpus I had no basis for believing that the portion of the charge concerning intent and state of mind was in any way constitutionally infirm. The language of the charge was taken nearly verbatim from Georgia statutes which had repeatedly been upheld by the Georgia Supreme Court. I was aware of no case that would indicate that this portion of the jury charge was unconstitutional and I had no reason to believe that the charge was improper.
>
> We included in the petition for writ of habeas corpus all claims which appeared to be viable based on our reasoned and professional judgment of the facts and law. It was our intent to include all non-frivolous claims. We did not deliberately withhold this claim or intentionally abandon it. This claim was not included in the petition because in the exercise of our reasoned professional judgment we were not aware that it existed. It was not until I read the Supreme Court decision in *Francis v. Franklin* in the United States Law Week during the early part of May, 1985 that I realized that the charge given in Mr. Tucker's case was constitutionally infirm. I immediately began preparing a second petition for writ of habeas corpus and filed the same with all reasonable speed.

■ The district court held that *Franklin* did not constitute "new law" and that petitioner's *Franklin* claim should have been raised in his first petition. We agree. The Supreme Court's decision in *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which was decided on June 18, 1979, over two and a half years before petitioner filed his first habeas petition in the district court, should have informed counsel that the challenged mandatory rebuttable presumption was questionable. *Franklin* is simply an extension of *Sandstrom*'s holding. In sum, the proffered affidavits of counsel are insufficient as a matter of law to provide a lawful excuse under the "abuse of the writ" prong of Rule 9(b).

■ Petitioner's explanation for the belated presentation of his second claim—challenging the composition of his traverse jury pool—also fails. His explanation is that the district court erred in concluding that this is a new claim subject to scrutiny under the abuse of the writ doctrine. According to petitioner, the court should have considered the claim as a "successive" claim—as having been raised initially in his first petition and adversely disposed of on the merits—and concluded that "the ends of justice" required the court to address the merits once again. We agree with the district court that petitioner did not raise this claim in his first petition; therefore, it cannot be treated as successive.

Petitioner represents that his fair cross-section claim—concerning the representation of blacks in his traverse jury pool—was raised by the following allegations of his first petition:

> Ground Fifteen: Petitioner was denied a fair, unbiased and impartial jury in violation of the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.
>
> Supporting Facts: All persons having conscientious or religious scruples against capital punishment were systematically excluded from the jury. The jury did not constitute a representative cross-section of the community.

The district court apparently did not, and we do not, read these allegations as raising the fair cross-section claim—based on the underrepresentation of blacks in petitioner's traverse jury pool—now before us. Rather, like the district court, we read these allegations as presenting a claim that

the systematic exclusion from petitioner's traverse jury of persons having conscientious or religious scruples against capital punishment denied him a traverse jury that constituted a representative cross-section of the community. In his report to the district court, which the court adopted, the magistrate summarily disposed of this claim in these words:

> Petitioner seeks habeas corpus relief on the basis that he was denied a fair, impartial, and unbiased jury in violation of his constitutional rights. Although this allegation was not briefed by petitioner, it will be addressed by the court.
>
> In support of this allegation, petitioner complains that anti-capital punishment jurors were systematically excluded from the jury. However, persons committed, before the trial has begun, to vote against the death penalty regardless of the facts and circumstances of the case may be struck for cause. *Witherspoon v. Illinois,* 391 U.S. 510, 522 n. 21 [88 S.Ct. 1770, 1777 n. 21, 20 L.Ed.2d 776] (1968). Thus, in the absence of any reference to a specific instance in which a juror was improperly excluded, petitioner is not entitled to relief.
>
> Petitioner also claims that the jury was not a representative cross-section of the community. This allegation is a bare assertion unsupported by any evidence and will not be given further consideration by this court. *See Haggard v. Alabama,* 550 F.2d 1019 (5th Cir.1977).

The district court, in disposing of petitioner's instant fair cross-section claim, correctly concluded "that the factual information regarding the composition of Petitioner's traverse jury pool has been in existence at all times shortly prior to and subsequent to Petitioner's trial and conviction in the Superior Court of Muscogee County on March 9, 1978." Petitioner's only excuse for not presenting this information to the district court when he prosecuted his first habeas petition is that he lacked the resources to gather the information. His excuse is inadequate. The record is clear that at no time during the prosecution of his first habeas petition did petitioner seek leave of court, pursuant to Rule 6, "Dis-

covery," Fed.R. Governing Sec. 2254 Cases, *see* 28 U.S.C. § 2254 (1982); 28 U.S.C. § 2246 (1982), to discover and to present the information that, he now contends, gives rise to his fair cross-section claim. *See generally Harris v. Nelson,* 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969). By waiting until the eve of his execution to raise this claim and to proffer the evidence to support it, petitioner has abused the writ.

For the foregoing reasons, petitioner's application for a certificate of probable cause is DENIED.

The order we issued on May 26, 1987, staying petitioner's execution until 7:00 p.m., Thursday, May 28, 1987, shall expire at that time.