Calvin GUNN, Petitioner–Appellee,

v.

Lanson NEWSOME, Warden,
Respondent–Appellant.

No. 87–8287.

United States Court of Appeals,
Eleventh Circuit.

Aug. 8, 1988.

Order Granting Rehearing In Banc
Sept. 16, 1988.

William B. Hill, Jr., Asst. Atty. Gen., Susan V. Boleyn, Atlanta, Ga., for respondent-appellant.

Steven F. Hauser, Coca–Cola Co., Atlanta, Ga. (court appointed), for petitioner-appellee.

Before KRAVITCH, Circuit Judge, HENDERSON *, and HENLEY **, Senior Circuit Judges.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

HENLEY, Senior Circuit Judge:

Respondent Lanson Newsome, Warden, Georgia State Prison (hereafter State), appeals from the district court's[1] order granting habeas corpus relief to petitioner Calvin Gunn. 28 U.S.C. § 2254. We affirm the decision of the district court.

Gunn was convicted of malice murder following a jury trial in Rabun County, Georgia in June, 1979. The conviction arose from a fight between Gunn and the victim, Eddie Williams. On March 23, 1979, Gunn and Williams were bowling at a place called the Frontier Lounge. In the course of the evening Gunn and Williams had an argument. A witness testified that Gunn threatened to kill Williams. The two had fought in the past and they stepped outside the lounge to settle their dispute by fisticuffs. The bartender intervened before blows were exchanged.

Gunn and Williams then left the lounge premises in separate vehicles. Mike Shirley accompanied Williams. Gunn was following Williams' vehicle. At trial Shirley testified that Williams exclaimed, "I'm not going to let the son-of-a-bitch follow me everywhere. I'm going to stop and get this over with." Williams then pulled into a vacant parking lot and Gunn followed. Gunn testified that after the bartender intervened at the lounge, the two had agreed to meet at the second parking lot.

After the three persons left the parked cars, Shirley walked to a bush twenty-five yards away to relieve himself. Williams and Gunn then exchanged words and Gunn pulled out the butt end of a sawed off cue stick and struck Williams on the head. Shirley testified that Gunn struck Williams two or three clean blows to the head before Williams was able to ward off further blows with his hands.[2] The two grappled together and fell to the ground, Gunn losing the cue stick in the scuffle. At this point Shirley retrieved the cue stick and bludgeoned Gunn about the back. Shir-

ley's intervention allowed Williams to gain the advantage in the fight. Gunn asked to be released and Williams obliged. Williams then drove back to the lounge with Shirley as a passenger.

When Williams and Shirley arrived at the lounge, Williams remained in the car complaining that he did not feel well. Gunn then drove up and purportedly said, "I got your buddy, Shirley, I'm going to kill you next." Williams went home that evening saying he would be all right. The following morning, however, he was found convulsing and was taken to the hospital where he died a short time later.

The physician who treated Williams when he arrived performed the autopsy and testified that Williams died as the result of a blow to the left side of the head which fractured the skull resulting in cerebral edema. The doctor further testified that a blow with a sawed off cue stick would have been compatible with Williams' injury.

The jury was instructed on both malice murder and voluntary manslaughter. After deliberating for an hour on June 20, 1979, the jury returned a verdict of guilty as to malice murder. Gunn was sentenced to mandatory life imprisonment.

Gunn appealed to the Georgia Supreme Court, raising six issues. Two issues involved persons serving on the grand jury which returned the indictment. The other issues were venue; failure to grant a continuance to locate a witness; introduction of a cue stick similar to the one Gunn used; and improper questioning by the prosecutor. Gunn's conviction was affirmed. *Gunn v. State*, 245 Ga. 359, 264 S.E.2d 862 (1980).

In July, 1982 Gunn petitioned pro se the United States District Court for the Northern District of Georgia for a writ of habeas corpus. In his petition Gunn raised five of

---

1. The Honorable Charles A. Moye, Jr., United States District Judge, Northern District of Georgia.

2. Gunn testified that he struck Williams with the cue stick because Williams had a large rock in his left hand and attempted to strike Gunn.

Shirley testified that he saw no rock, but he was unable to see Williams' left hand. Williams, however, was right handed.

the six grounds he argued on his direct appeal to the Georgia Supreme Court. The application was denied on April 28, 1983, and Gunn did not appeal.

In September, 1985 Gunn, pro se, sought a writ of habeas corpus in Georgia state court. Gunn's sole claim of error was that a jury instruction on intent given at his trial created an unconstitutional presumption of intent, thereby relieving the State of its burden of proof on that element of the crime for which he was convicted. Gunn's petition was denied on February 6, 1986, and the Georgia Supreme Court denied Gunn's application for a certificate of probable cause to appeal on March 11, 1986.

On April 1, 1986, Gunn filed his second pro se petition for federal habeas corpus relief raising the sole ground he had raised in his state habeas corpus proceeding. The State opposed Gunn's petition as being successive and an abuse of the writ. The district court found no abuse and, proceeding to the merits, granted Gunn's petition for a writ of habeas corpus unless the State grants him a new trial. This appeal followed and Gunn is represented by counsel for the first time in his post-conviction proceedings.[3] We affirm.

■ Initially, appellant contends that the district court erred in not dismissing Gunn's successive federal habeas corpus application as an abuse of the writ. *See* 28 U.S.C. foll. § 2254 Rule 9(b) (a successive petition may be dismissed if the district court finds that the failure to assert the new ground in a prior petition constituted an abuse of the writ). "Absent deliberate withholding or intentional abandonment of a claim in the first federal petition, the inquiry into whether a petitioner has abused the writ in raising a new law claim must consider the petitioner's conduct and knowledge at the time of the preceding federal application." *Moore v. Kemp*, 824 F.2d 847, 851 (11th Cir.1987) (en banc), *petition for cert. filed* (Jan. 27, 1988) (WESTLAW, ic service).

Gunn's petition challenges the constitutionality of the following charge to the jury:

A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but this presumption may be rebutted. A person will not be presumed to act with criminal intent but you the jury may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

On June 18, 1979, only two days prior to Gunn's conviction, the Supreme Court found a jury instruction that "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" to be unconstitutional. *Sandstrom v. Montana*, 442 U.S. 510, 513 & 524, 99 S.Ct. 2450, 2453 & 2459, 61 L.Ed.2d 39 (1979). *Sandstrom* was not raised at trial or on Gunn's direct appeal. Gunn's first federal habeas corpus petition merely recited the errors alleged by his attorney on direct appeal. The record does not support appellant's contention that Gunn's first application for federal habeas corpus revealed a knowledge of the law. At best, it revealed Gunn's ability to copy unimaginatively his attorney's appellate brief.

Further, Gunn's explanation for why he did not raise the *Sandstrom* issue is more plausible than the State's assertion that Gunn possessed the legal acumen to discover and raise the issue in his first petition. Gunn claimed that he became aware of the instruction issue when the Supreme Court announced its decision in *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), decided April 29, 1985. In *Franklin* the Court found unconstitutional a jury instruction remarkably similar to the one in Gunn's case which also arose from a Georgia conviction. *Id.* at 311–12, 105 S.Ct. at 1969–70. Gunn initiated his state habeas petition approximately five months after *Franklin* was decided. The inference from the State's argument that Gunn is knowledgeable in the law (*i.e.*, that Gunn knew of the *Sandstrom* issue at the time of his first petition in July, 1982, but did not raise it until some three years later) is simply untenable. The district court did

**3.** We express our thanks to appointed counsel for his able representation in this appeal.

not err in finding Gunn's petition not to be an abuse of the writ.

■ It is too late in the day for the appellant to argue that the challenged instruction, standing alone, is not an unconstitutional burden shifting presumption. *See Franklin*, 471 U.S. at 318, 105 S.Ct. at 1973. We must, however, consider the jury instructions as a whole and determine whether the unconstitutional burden shifting presumption is ameliorated by other instructions given to the jury. *Id.* at 318–19, 105 S.Ct. at 1973; *Potts v. Kemp*, 814 F.2d 1512, 1514–15 (11th Cir.1987). In this regard, we find the State's argument totally without merit. The jury charge in Gunn's case did not differ significantly from the charge in *Franklin* which is quoted at length in then Justice (now Chief Justice) Rehnquist's dissent. *Franklin*, 471 U.S. at 334–36, 105 S.Ct. at 1981–82.[4] We agree with the district court that the jury charge, read as a whole, did not cure the constitutional infirmity of the burden shifting presumption instruction. Accordingly, we turn to the question of harmless error.

■ The harmless error standard of *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967) ("before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt"), applies to jury instructions that violated *Sandstrom* and *Franklin*. *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 3108–09, 92 L.Ed.2d 460 (1986); *Bowen v. Kemp*, 832 F.2d 546, 548 (11th Cir. 1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1120, 99 L.Ed.2d 281 (1988). A *Sandstrom* error is harmless in either of two situations: "where the erroneous instruction was applied to an element of the crime that was not at issue in the trial, or (2) where the evidence as to defendant's guilt was overwhelming." *Bowen*, 832 F.2d at 548.

The first harmless error situation is inapplicable to this case. Gunn testified that he did not intend to kill Williams, but merely to stop him long enough so Gunn could "get gone." Gunn admitted that he struck Williams with the cue stick; however, he claimed he acted in self defense. We have previously held that under Georgia law a defendant claiming self defense may admit that the killing occurred at his hand,[5] but does not concede intent to kill. *Mason v. Balkcom*, 669 F.2d 222, 227 (5th Cir. Unit B 1982), *cert. denied*, 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983). This is true even where the defendant uses a weapon. *Id.* Accordingly, we turn to the second instance in which a *Sandstrom* error may be harmless.

The focus of our inquiry here is not whether the evidence that Gunn struck the death dealing blow is overwhelming, but whether the evidence of Gunn's *intent* to kill Williams was overwhelming. *Brooks v. Kemp*, 762 F.2d 1383, 1390 (11th Cir. 1985) (en banc), *cert. denied*, —— U.S. ——, 106 S.Ct. 3337, 92 L.Ed.2d 742 (1986) (prisoner's petition for certiorari) *and vacated and remanded*, —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986) (warden's petition for certiorari), *reinstated*, 809 F.2d 700 (11th Cir.) (en banc), *cert. denied*, —— U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987). Thus, the jury's rejection of Gunn's claim that his blow did not cause Williams' death, *see supra* note 5, "does not necessarily imply that they could have entertained no reasonable doubt concerning whether he intended to cause the victim's death." *Lakes v. Ford*, 779 F.2d 1578, 1583 (11th Cir.1986). In *Potts* we have catalogued factual scenarios from previous cases in which the evidence of intent was found to be overwhelming. *Potts*, 814 F.2d at 1516. In those cases, intent to kill the victim was the only conceivable inference that could be drawn from the defendants' conduct.

**4.** The State's argument is made by the same Georgia Assistant Attorney General who argued the *Franklin* case in the Supreme Court. Counsel makes no attempt in her brief to distinguish the entire charge found unconstitutional in *Franklin* from the one now before this court.

**5.** At trial Gunn did not concede that he struck the death blow, but that it may have come from Shirley. In light of the verdict, the jury obviously decided that Gunn's blow caused Williams' death. *See Lakes v. Ford*, 779 F.2d 1578, 1583 (11th Cir.1986).

Here, while Gunn undoubtedly intended to fight Williams and also to strike him with the cue stick, it does not necessarily follow that he struck the blow with the intent to kill Williams. The district court reasonably interpreted the threats Gunn is purported to have made against Williams' life as statements made in the heat of the moment. Although the jury could have reasonably concluded that Gunn intended to kill Williams, it is equally possible, from the evidence, that they may have believed that the blow was struck without the actual intent to kill and relied on the presumption of intent raised by the *Sandstrom* instruction. We agree with the district court that it cannot be stated beyond a reasonable doubt that Gunn intended to kill Williams when he struck him. The *Sandstrom* error was, therefore, not harmless and the district court's decision is AFFIRMED.

HENDERSON, Senior Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the challenged jury instruction is unconstitutional and that the evidence that Gunn intended to kill Williams is not overwhelming. However, because I cannot endorse the majority's analysis of the abuse of the writ question, I respectfully dissent from that portion of the majority opinion.

The district court's conclusion that the petitioner did not abuse the writ of habeas corpus rests on two, intertwined rationales. First, the district court observed that *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), which was decided after Gunn's first federal habeas corpus petition, constituted an intervening change in the law. Second, the district court found that Gunn's pro se status, in combination with the emergence of *Francis*, excused his failure to challenge the jury instruction on intent in his first federal petition. The first part of the district court's rationale has since proved to be erroneous, and I do not believe the fact that Gunn was proceeding without counsel is enough, standing alone, to excuse his failure to make his burden-shifting claim at the time of his first petition in 1982.

It is clear that *Francis* is "merely an application of the principle that governed [the Supreme Court's] decision in *Sandstrom v. Montana*, [442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)]." *Yates v. Aiken*, — U.S. —, 108 S.Ct. 534, 538, 98 L.Ed.2d 546, 554 (1988); *see also Tucker v. Kemp*, 819 F.2d 978, 980 (11th Cir.1987). *Sandstrom* was decided over three years before Gunn filed his first federal habeas corpus petition. The question becomes, then, whether his pro se status in 1982 justifies his failure to raise the *Sandstrom* issue.

Once the state properly pleads abuse of the writ, the petitioner may avoid dismissal if he demonstrates by a preponderance of the evidence that 1) he was unaware of the facts upon which his newly asserted claims are based or 2) he did not know that those facts constituted a basis for federal habeas corpus relief. *Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir.), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). Gunn concedes that he cannot satisfy the first prong of the *Booker* test. He was present in the courtroom when the trial judge instructed the jury. The crux of Gunn's response to the state's allegation of abuse of the writ focuses on the second element of *Booker*. He argues that he did not appreciate the legal significance of the jury instruction until he learned of the decision in *Francis*.

The only evidence Gunn offers to support this response is that he was acting as his own attorney at the time of his first petition. From this evidence, he maintains that his lack of knowledge about the law rendered him unable to assert the burden shifting claim until *Francis* struck down an almost identical jury instruction. For two reasons, I do not agree with the majority's conclusion that this explanation alone supports the petitioner's burden under the second part of the *Booker* test.

First, the record indicates that Gunn "knew of the possibility of making such a claim." *Booker*, 764 F.2d at 1377. This is so because Gunn was represented by counsel during his trial and direct appeal to the Supreme Court of Georgia. That appeal

was submitted on November 2, 1979, nearly four and a half months after the decision in *Sandstrom.* His counsel at that point was deemed to have knowledge of *Sandstrom,* and Gunn should have asserted his challenge to the defective jury instruction at that point.[1] Our cases clearly indicate that failure to raise a claim on direct appeal can constitute abuse of the writ. *Bowden v. Kemp,* 793 F.2d 273, 274 (11th Cir.), *cert. denied,* 477 U.S. 910, 106 S.Ct. 3289, 91 L.Ed.2d 576 (1986). *Goode v. Wainwright,* 731 F.2d 1482, 1483–84 (11th Cir.1984).

Second, I fear the majority's holding severely weakens the doctrine of abuse of the writ. If a pro se habeas corpus petitioner can excuse his failure to pursue a claim that is not novel when he is aware of the facts that form the basis of the claim, then it is difficult to imagine a situation in which a court could conclude, absent an admission of knowledge by the petitioner, that a pro se litigant has abused the writ. Such a rule would encourage the piecemeal litigation of claims that the doctrine was designed to eliminate.

This is not to say that a pro se petition should be held to the same standard as one drafted by counsel; our precedent is to the contrary. *Mays v. Balkcom,* 631 F.2d 48, 51 (5th Cir.1980).[2] However, given the Supreme Court's decision in *Yates,* I can only conclude that the majority opinion grants the relief sought by Gunn simply because he was not represented by counsel when he filed his first federal petition. I cannot agree that the petitioner's pro se status, without more, satisfies the second part of the *Booker* test.

Gunn cites *Haley v. Estelle,* 632 F.2d 1273 (5th Cir.1980) for the proposition that a petitioner's lack of counsel alone excuses his failure to raise an available claim in an earlier petition. Although the language of *Haley* could be construed to support this position, 632 F.2d at 1276, I do not read the case that broadly. In *Haley,* the court vacated the district court's order dismissing, as an abuse of the writ, the petitioner's second federal habeas corpus petition. The court ordered a remand to determine the viability of the petitioner's claim that he had only recently discovered facts that would support his second petition with the help of another inmate. *Id.* at 1275–76.[3] The *Haley* court merely granted the petitioner an opportunity to present evidence, which, in combination with his lack of representation by counsel, might excuse his neglect. Gunn cites no other cases which hold that a federal habeas corpus petitioner's pro se status by itself constitutes excusable neglect, nor have I uncovered any such cases in my independent research.

Accordingly, I would reverse the district court's judgment and dismiss Gunn's second federal habeas corpus petition for abuse of the writ.

KRAVITCH, Circuit Judge, concurring:

I concur in the majority opinion, but write separately to emphasize that this case should not be interpreted as establishing a bright line rule that a pro se habeas petitioner is always excused from failing to raise claims in a first petition simply because of his or her pro se status. The dissent mischaracterizes our opinion as holding that Gunn's pro se status, standing alone, excused his failure to raise the *Franklin* claim in his first federal habeas petition. Our opinion, however, is not based on the mere fact that Gunn was not represented by counsel when he filed his first federal habeas petition. More precise-

---

1. There is no procedural default in this case because the Georgia courts declined to apply a procedural bar and considered Gunn's claim on the merits in the collateral proceedings. *See Oliver v. Wainwright,* 795 F.2d 1524, 1529–30 (11th Cir.1986), *cert. denied, cert. denied sub nom. Oliver v. Dugger,* — U.S. —, 107 S.Ct. 1380, 94 L.Ed.2d 694 (1987). Interestingly, in the procedural default context, a petitioner's pro se status alone does not relieve him of the obligation of proving cause and prejudice. *Al-*

*exander v. Dugger,* 841 F.2d 371, 373–74 n. 3 (11th Cir.1988).

2. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding authority all decisions of the Fifth Circuit rendered prior to October 1, 1981.

3. Such evidence would allow the petitioner to avoid dismissal under the first element of the *Booker* test.

ly, it is Gunn's pro se status, coupled with the technical nature of his claim, that compels us to conclude that he did not abuse the writ.

As the dissent has noted, Gunn can avoid dismissal of his second habeas petition if he demonstrates by a preponderance of the evidence that he either was unaware of the facts upon which his newly asserted claim is based or that he did not know that those facts constituted a basis for federal habeas corpus relief. *Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir.), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). Gunn argues that his second petition should not be dismissed because when he filed his first petition he was not aware that the jury charge given at his trial constituted a basis for federal habeas relief. Although it is true that if Gunn had been represented by counsel on his first habeas petition, his delay in raising the *Franklin* claim would have been an abuse of the writ, *Tucker v. Kemp*, 819 F.2d 978, 980 (11th Cir.1987) (*Franklin* is not new law for abuse of the writ purposes where petitioner represented by counsel), a layman unschooled in the law should not be penalized for failing to discern legal intricacies that evaded even federal judges and members of the Georgia Supreme Court. *See, e.g., Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (three justices dissenting from holding that *Franklin* charge violates *Sandstrom*);[1]

*Franklin v. Francis*, 720 F.2d 1206 (11th Cir.1983) (reversing district court order that *Franklin* charge did not violate *Sandstrom*); *Skrine v. State*, 244 Ga. 520, 260 S.E.2d 900, 900–01 (1979) (*Franklin* charge does not violate *Sandstrom*). The dissent's insistence that Gunn's pro se status does not excuse his initial failure to raise the *Franklin* claim disregards precedent of this circuit holding that a pro se petitioner "should not be penalized because his inexperience in jurisprudence left him unaware of claims he had not considered at the time of his first application for habeas corpus." *Haley v. Estelle*, 632 F.2d 1273, 1276 (5th Cir.1980)[2]; *accord Mays v. Balkcom*, 631 F.2d 48, 51 (5th Cir.1980) (because a pro se habeas petitioner "will more than likely not be aware of all the possible set of facts which could result in a granting of relief by way of habeas corpus," a pro se habeas petition filed by a prisoner "should be examined more liberally than one drawn up by an attorney").

The dissent argues that Gunn "knew of the possibility of making" a *Franklin* claim because when Gunn was represented by counsel on his direct appeal in 1979 *Sandstrom* had already been decided, and thus, Gunn's counsel was deemed to have knowledge of *Sandstrom*. In other words, the dissent attributes appellate counsel's *constructive* knowledge of *Sandstrom* to Gunn and insists that this knowledge sup-

---

1. Justice Rehnquist, joined by Chief Justice Burger and Justice O'Connor, dissented on the ground that the majority "needlessly extends our holding in *Sandstrom v. Montana* to cases where the jury was not required to presume conclusively an element of a crime under state law." *Francis*, 105 S.Ct. at 1980 (citation omitted). Justice Rehnquist further noted that "even assuming the one or two sentences singled out by the Court might conceivably mislead [a reasonable juror], I do not believe that a reasonable person reading that language 'in the context of the overall charge,' could possibly arrive at the Court's conclusion here." *Id.* (citation omitted). Justice Powell also dissented, but only on the ground that the challenged language, in combination with the remainder of the jury charge, satisfied *Sandstrom*. *Id.* at 1977–80. Justice Powell agreed with the majority that " '[s]tanding alone,' the challenged language could be viewed as 'an unconstitutional burden-shifting presumption with respect to the element of intent.' " *Id.* at 1978.

2. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

The dissent attempts to minimize the importance of *Haley* by pointing out that the *Haley* court remanded the case to the district court to hold an evidentiary hearing on the abuse of the writ issue. According to the dissent, "[t]he *Haley* court merely granted the petitioner an opportunity to present evidence, which, in combination with his lack of representation by counsel, might excuse his neglect." The *Haley* court, however, in no way indicated that petitioner's pro se status alone was not enough to defeat the state's accusation of abuse of the writ. Instead, it merely found the record below inadequate to make a decision on the abuse of the writ issue.

plied Gunn with the basis for making a *Franklin* claim in his first pro se habeas petition. The dissent offers no support for this argument, and we have found none. Indeed, the fact that Gunn's counsel on direct appeal had constructive knowledge of *Sandstrom* is irrelevant in determining whether Gunn himself, acting pro se, abused the writ by not including his *Franklin* claim in his first petition.[3]

For these reasons, I join the majority in holding that Gunn's failure to raise the *Franklin* claim in his first federal habeas petition does not constitute an abuse of the writ.

Order Granting Rehearing In Banc

Before RONEY, Chief Judge, TJOFLAT, HILL, FAY, VANCE, KRAVITCH, JOHNSON, HATCHETT, ANDERSON, CLARK, EDMONDSON and COX, Circuit Judges*.

BY THE COURT:

A member of this court in active service having requested a poll on the application for rehearing in banc and a majority of the judges of this court in active service having voted in favor of granting a rehearing in banc,

IT IS ORDERED that the above cause shall be reheard by this court in banc *with* oral argument on a date hereafter to be fixed. The clerk will specify a briefing schedule for the filing of in banc briefs. The previous panel's opinion is hereby VACATED.

---

**3.** The dissent maintains that "[o]ur cases clearly indicate that failure to raise a claim on direct appeal can constitute an abuse of the writ." To support this assertion, the dissent cites *Bowden v. Kemp*, 793 F.2d 273, 274 (11th Cir.), *cert. denied*, 477 U.S. 910, 106 S.Ct. 3289, 91 L.Ed.2d 576 (1986); *Goode v. Wainwright*, 731 F.2d 1482, 1483–84 (11th Cir.1984). Neither of these cases, however, holds that a petitioner abuses the writ by raising a claim in a federal habeas petition that he could have raised on direct appeal. Although both *Bowden* and *Goode* mention that the petitioners failed to raise their claims on direct appeal, the basis for finding an abuse of the writ in those cases was that the petitioners, acting with counsel, had unjustifiably failed to raise their claims in their first habeas petitions. The failure to raise these claims on direct appeal had nothing to do with

the determination of abuse of the writ in either case. Rule 9(b) provides that "[a] second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant to assert those grounds in a prior petition constituted an abuse of the writ." The rule simply does not provide for a holding of abuse of the writ based on a petitioner's failure to raise claims on direct appeal. The state may address that shortcoming by raising the issue of procedural default, which the state did not do in this case.

\* Senior U.S. Circuit Judge Albert J. Henderson has elected to participate in further proceedings in this matter pursuant to 28 U.S.C. 46(c).