Calvin GUNN, Petitioner–Appellee,

v.

Lanson NEWSOME, Warden, Respondent–Appellant.

No. 87–8287.

United States Court of Appeals, Eleventh Circuit.

Aug. 7, 1989.

William B. Hill, Jr., Asst. Atty. Gen., Susan V. Boleyn, Atlanta, Ga., for respondent-appellant.

Steven F. Hauser, c/o The Coca-Cola Co., Atlanta, Ga. (court appointed), for petitioner-appellee.

Before RONEY, Chief Judge,
TJOFLAT, HILL, FAY, VANCE,
KRAVITCH, JOHNSON, HATCHETT,
ANDERSON, CLARK *, EDMONDSON

* Judge Clark, did not hear oral argument, but
elected to participate in the decision of this case.

and COX, Circuit Judges, and
HENDERSON **, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

While serving a Georgia life sentence for malice murder, Calvin Gunn petitioned the district court pro se for a writ of habeas corpus under 28 U.S.C. § 2254. Gunn's sole basis for relief was that the trial court's jury instruction on the issue of intent had unconstitutionally shifted the state's burden of proof on that issue to Gunn. It was Gunn's second federal habeas petition, and he had not raised this issue in his first petition, which he had also filed pro se. The state argued that the district court should summarily dismiss the petition under Rule 9(b) of the Rules Governing Section 2254 Cases as an abuse of the writ, and opposed the petition on the merits. Taking note of Gunn's pro se status at the time he filed his first federal habeas petition and of the abstruse nature of the legal claim involved, the district court concluded that Gunn's second petition was not an abuse of the writ. Upon reaching the merits, the court found in Gunn's favor, and granted the writ unless the state retried Gunn within 120 days. The state appealed. A panel of this court agreed that the jury instruction had unconstitutionally shifted the state's burden, and that the error was not harmless; the panel was divided, however, on the abuse of the writ issue, with a majority voting to affirm the district court. 851 F.2d 1294 (1988). We determined to rehear the case in banc, and vacated the panel opinion. *Id.* at 1301. We now AFFIRM.

I.

A. FACTUAL BACKGROUND

In the early evening of March 23, 1979, Eddie Williams was bowling at the Frontier Lounge in Rabun County, Georgia, with his cousin, Russell Ivester, and Michael Shirley. Some time after the match had begun, Gunn arrived and asked if he could join the

** Senior U.S. Circuit Judge Henderson elected
to participate in this decision pursuant to 28
U.S.C. § 46(c).

game. Everyone agreed that Gunn could do so. During the bowling match, Gunn and Williams had an argument. Ivester testified that Gunn threatened to kill Williams, and Williams made similar threatening remarks to Gunn. The two had fought in the past, and they stepped outside the lounge to settle their dispute. A bartender intervened before blows were exchanged.

Gunn and Williams then left the lounge in separate vehicles. Mike Shirley accompanied Williams. Gunn followed Williams's vehicle. Williams noticed Gunn following him, and exclaimed, "I'm not going to let the son-of-a-bitch follow me everywhere. I'm going to stop and get this over with." He then pulled into a vacant parking lot, and Gunn followed. According to Gunn, the two had agreed to meet at this parking lot after the bartender had intervened at the lounge. It appears that this parking lot was the customary venue for fights.

After Williams, Shirley, and Gunn got out of the cars, Shirley walked to a bush twenty-five yards away to relieve himself. Williams and Gunn then exchanged words, and Gunn pulled out the butt end of a sawed-off cue stick and struck Williams on the head. Shirley testified that Gunn struck Williams two or three clean blows to the head before Williams was able to ward off further blows with his hands. Gunn testified that he hit Williams with the cue stick in self-defense because Williams had a large rock in his left hand and had attempted to strike him. Shirley testified that he did not see a rock, but he was unable to see Williams's left hand. Gunn and Williams grappled together and fell to the ground, Gunn losing the cue stick in the scuffle. At this point Shirley retrieved the cue stick and bludgeoned Gunn about the back. Shirley's intervention allowed Williams to gain the advantage in the fight. Gunn asked to be released, and Williams obliged. Williams then drove back to the lounge with Shirley as a passenger.

When Williams and Shirley arrived at the lounge, Williams remained in the car, complaining that he did not feel well. Gunn then drove up and purportedly told Shirley, "I got your buddy, Shirley, I'm going to kill you next."[1] Williams went home that evening saying he would be all right. The following morning, however, he was found convulsing and was taken to the hospital, where he died a short time later.

The physician who treated Williams when he arrived at the hospital also performed the autopsy, and testified that Williams died as the result of a blow to the left side of the head which fractured the skull resulting in cerebral edema. The doctor further testified that a blow with a sawed-off cue stick would have been compatible with Williams's injury.

## B. PROCEDURAL HISTORY

Gunn was tried before a Rabun County jury in June of 1979. The court instructed the jury on both malice murder and voluntary manslaughter. As part of its jury instructions, the court instructed the jury that the law presumes a person intends "the natural and probable consequences of his acts, but this presumption may be rebutted." Gunn's lawyer did not challenge the constitutionality of the jury instruction. On June 20, 1979, the jury returned a verdict of guilty as to malice murder. Gunn was sentenced to mandatory life imprisonment.

Gunn appealed to the Georgia Supreme Court, raising six issues. Two issues involved the impanelling of the grand jury that had indicted Gunn. The other issues were the denial of a motion for change of venue, failure to grant a continuance to locate a witness, introduction into evidence of a cue stick similar to the one Gunn allegedly used, and improper questioning by the prosecutor that impermissibly put Gunn's character into issue. Gunn's lawyer did not challenge the jury instructions on appeal. The Supreme Court of Georgia affirmed Gunn's conviction. *Gunn v. State*, 245 Ga. 359, 264 S.E.2d 862 (1980).

Gunn's first federal habeas petition, which he filed pro se, simply repeated five of the six issues that Gunn's lawyer had

---

1. We note that while Gunn was allegedly saying this, Williams was alive and sitting in the car.

raised on direct appeal. These claims were that the grand jury had been unconstitutionally impanelled (Claim 1), that he had been denied a fair trial by the trial court's denial of a motion for change of venue (Claim 2), that he had been denied a fair trial by the trial court's denial of a motion for continuance (Claim 3), the admission of evidence—the cue stick—that was prejudicial and not related to the crime (Claim 4), and that the prosecutor impermissibly put his character into issue in the case (Claim 5). Gunn did not challenge the constitutionality of the jury instructions.

The state responded on the merits to each claim. The magistrate held an evidentiary hearing, after which the district court, adopting the recommendation of the magistrate, denied relief in April of 1983.

In September of 1985, four months after the Supreme Court's decision in *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct.1965, 85 L.Ed.2d 344 (1985), Gunn pro se filed a state habeas petition in the Superior Court of Tattnall County, Georgia. Gunn's sole ground for relief was that the trial court's jury instruction on intent—virtually identical to the one found unconstitutional in *Franklin*—had created an unconstitutional presumption of intent to kill.

The state did not raise any state law procedural default bar as a defense; instead, the state responded to Gunn's claim on the merits. After an evidentiary hearing, the state court denied Gunn's petition, concluding that the jury instruction created only a permissive inference of intent, and thus did not shift the state's burden of proof. The Georgia Supreme Court denied Gunn's application for a certificate of probable cause in March of 1986.

Having exhausted his state remedies, Gunn now returned pro se to federal court and filed his second petition for a writ of habeas corpus on April 1, 1986. The sole ground for relief that Gunn raised was the constitutionality of the trial court's jury instruction on the issue of intent.

The state responded to Gunn's petition by arguing that the petition should be summarily dismissed as an abuse of the writ. The magistrate concluded that Gunn's second petition was not an abuse of the writ, and invited the state to respond to the merits of Gunn's claim. After the state had responded, the magistrate concluded that the jury instruction on the issue of intent had impermissibly shifted part of the government's burden of proof. The district court, before whom the state had renewed its motion to dismiss the petition as an abuse of the writ, reviewed the record *de novo* and concluded that Gunn's second petition was not an abuse of the writ and that he should prevail on the merits of his claim. The district court granted the writ unless the state retried Gunn within 120 days. The state appeals.[2]

The state raises three issues in its appeal. First, the state challenges the district court's determination that Gunn did not abuse the writ. Second, the state challenges the district court's decision on the merits that the jury instruction unconstitutionally shifted the government's burden to Gunn. Finally, the state contests the district court's conclusion that the constitutionally infirm jury instruction was not harmless error.

## II. ABUSE OF THE WRIT

### A.

■ Because the writ of habeas corpus is equitable in origins, under certain circumstances a court may decline to entertain a petition properly within its jurisdiction.[3] The focus of the court's inquiry in

2. The state did not seek a stay of the court's order pending appeal. Arguing that the writ irretrievably issued 120 days after the date of the district court's order, Gunn has moved this court to dismiss the state's appeal as moot. By separate order we have denied Gunn's motion to dismiss. Gunn, who is currently on parole, has not challenged the power of the state to enforce the conditions of his parole while this appeal

has been pending; therefore, the issue of whether the state must seek a stay pending appeal of an order conditionally granting habeas relief is not properly before us, and we decline to speculate on the subject.

3. By "entertain" we mean "a federal court's conclusion, after examination of the application with such accompanying papers as the court deems necessary, that a hearing [or determina-

making this threshold determination is on the conduct of the habeas petitioner, because "a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." *Sanders v. United States,* 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963) (quoting *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963)).

Title 28 U.S.C. § 2244 and Rule 9 of the Rules Governing Section 2254 cases in the United States District Courts identify conduct that may cause a petitioner to forfeit his right to prosecute a federal habeas petition. For example, where a petitioner unreasonably delays in asserting a claim, and the state is prejudiced by the delay, Rule 9(a) applies equity's rule of laches to the habeas petitioner.[4] Rule 9(b) and 28 U.S.C. § 2244 in turn address the problem of prisoners repeatedly filing successive habeas petitions or abusing the writ by asserting their claims piecemeal.[5]

In a successive petition, the petitioner raises a claim that he had raised in a prior petition and that had been resolved on the merits.[6] Although res judicata does not apply in the context of habeas corpus, *Sanders,* 373 U.S. at 7–8, 83 S.Ct. at 1073,

equity usually will not permit a petitioner to reassert a claim already resolved against him in the hope that his successive petition will be heard by a different and perhaps more sympathetic judge. *See* Sec. 2254 Cases R. 9 advisory committee's note ("a successive application already decided on the merits may be submitted in the hope of getting before a different judge in multi-judge courts"). In addition, the important need for finality in criminal law counsels strongly against courts repeatedly reviewing criminal convictions. *See Teague v. Lane,* — U.S. —, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) ("Without finality, the criminal law is deprived of much of its deterrent effect") (plurality opinion). In such a situation the court may dismiss the successive petition unless the petitioner can show that entertaining the petition would serve the ends of justice. *Kuhlmann v. Wilson,* 477 U.S. 436, 448–53, 106 S.Ct. 2616, 2624–26, 91 L.Ed.2d 364 (1986); *Sanders,* 373 U.S. at 15, 16–17, 83 S.Ct. at 1077, 1077–78.

Rule 9(b) also addresses the case of a second or subsequent petition that raises a claim the petitioner did not raise in his prior petition, or, if he did present the claim, it was not adjudicated on the merits.[7]

tion] on the merits legal or factual is proper.[ ]" *Brown v. Allen,* 344 U.S. 443, 461, 73 S.Ct. 397, 409, 97 L.Ed. 469 (1953).

4. Under Rule 9(a), if the court determines that the petitioner knew, or with reasonable diligence should have known, of the grounds he has raised in the allegedly-delayed petition, and that his delay in asserting the claim was unreasonable as a matter of law, then the court may dismiss the petition if the state can make a particularized showing of prejudice resulting from the petitioner's delay. *Thomas v. Dugger,* 846 F.2d 669 (11th Cir.1988); *Lawrence v. Jones,* 837 F.2d 1572 (11th Cir.1988); *Davis v. Dugger,* 829 F.2d 1513 (11th Cir.1987). *See also Hill v. Linahan,* 697 F.2d 1032 (11th Cir.1983) (quoted with approval in *Jones* ). The advisory committee note to Rule 9 observes, "[s]ubdivision (a) is not a statute of limitations. Rather, the limitation is based on the equitable doctrine of laches.... [T]he language of the subdivision, ... is permissive rather than mandatory. This clearly allows the court which is considering the petition to use discretion in assessing the equities of the particular situation."

5. Rule 9(b) provides as follows:

**Successive Petitions.** A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

6. It may be helpful to clarify our terminology. A petition that raises a claim already adjudicated through a prior petition is a "successive petition." In contrast, a petition that raises grounds for relief not raised in the prior petition is analyzed as an "abuse of the writ." *See Kuhlmann v. Wilson,* 477 U.S. 436, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986) (plurality opinion). *See also, e.g., Sanders v. United States,* 373 U.S. 1, 10, 83 S.Ct. 1068, 1074, 10 L.Ed.2d 148 (1963).

7. That portion of Rule 9(b) that speaks to the abuse of the writ is coterminous with 28 U.S.C. § 2244(b); therefore we do not treat Rule 9(b) and § 2244(b) separately. 28 U.S.C. § 2244(b) provides as follows:

When after an evidentiary hearing on the merits of a material factual issue, or after a

In this situation, "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078.[8] Thus, a court may dismiss such a petition, but not simply because it is a second or subsequent petition, for "not all piecemeal litigation is 'needless,'" *Booker v. Wainwright*, 764 F.2d 1371, 1376 (11th Cir.), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). *See Miller v. Dugger*, 858 F.2d 1536 (11th Cir.1988); *Haley v. Estelle*, 632 F.2d 1273, 1276 (5th Cir.1980).[9] *See also Woodard v. Hutchins*, 464 U.S. 377, 383, 104 S.Ct. 752, 755, 78 L.Ed.2d 541 (1984) (White and Stevens, JJ., dissenting). Rather, the court may dismiss the petition because equity will not permit the petitioner to invoke the powers of the very court which he has sought to use as his instrument of vexation, harassment, or delay. The court's focus is on the conduct of the petitioner, and whether the petitioner's conduct is such that he has disentitled himself from seeking the federal habeas relief. *E.g., Paprskar v. Estelle*, 612 F.2d 1003 (5th Cir.) ("When we examine the conduct of petitioner in light of the equities, we clearly cannot conclude that this petition constitutes 'needless piecemeal litigation' or that its 'purpose is to vex, harass, or delay.' There was no abuse of the writ."), *cert. denied*, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980).

■ If a court determines that the petitioner has abused the writ, it may summarily dismiss the petition unless to entertain the petition will serve the ends of justice. *Sanders*, 373 U.S. at 18–19, 83 S.Ct. at 1079; *Davis v. Kemp*, 829 F.2d 1522, 1526 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1099, 99 L.Ed.2d 262 (1988). If, on the other hand, the court finds that the petitioner has not abused the writ, then the court shall entertain the petition on the merits.

■ The government has the burden of pleading that the habeas petitioner has abused the writ. *Price v. Johnston*, 334 U.S. 266, 291–92, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948). Once the government does so, the burden shifts to the petitioner to show that his conduct was not an abuse of the writ. *Id.* at 292, 68 S.Ct. at 1063; *Witt v. Wainwright*, 755 F.2d 1396, 1397 (11th Cir.), *cert. denied*, 470 U.S. 1039, 105 S.Ct. 1415, 84 L.Ed.2d 801 (1985). The petitioner can meet this burden by showing that his failure to raise the claim in a prior petition was the result of "excusable neglect." *Potts v. Zant*, 638 F.2d 727, 740–41 (5th Cir. Unit B),[10] *cert. denied*, 454 U.S.

---

hearing on the merits of an issue of law, a person in custody pursuant to the judgment of a State court has been denied by a court of the United States or a justice or judge of the United States release from custody or other remedy on an application for a writ of habeas corpus, a subsequent application for a writ of habeas corpus in behalf of such person need not be entertained by a court of the United States or a justice or judge of the United States unless the application alleges and is predicated on a factual or other ground not adjudicated on the hearing of the earlier application for the writ, and unless the court, justice, or judge is satisfied that the applicant has not on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ.

Although we have noted that by their terms Rule 9(b) and § 2244(b) apply only to a claim adjudicated on the merits on the prior petition, we express no sentiment as to how that principle interrelates with the requirement that a court must dismiss without prejudice a "mixed" petition containing both exhausted and unex-

hausted claims. *Cf. Rose v. Lundy*, 455 U.S. 509, 520–21, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (1982) (plurality opinion). The issue is not before us, therefore we do not address it.

**8.** Although *Sanders* involved a petition brought under 28 U.S.C. § 2255, the Court noted that the same rules apply to federal habeas petitions brought by a state prisoner under 28 U.S.C. § 2254. *Sanders*, 373 U.S. at 14–15, 83 S.Ct. at 1076–77. Thus, for our purposes in discussing the abuse of the writ, we may look to case law developed under both § 2254 and § 2255.

**9.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (in banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

**10.** In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all decisions of Unit B of the former Fifth Circuit handed down after September 30, 1981.

877, 102 S.Ct. 357, 70 L.Ed.2d 187 (1981). Or, expressed differently, the petitioner may prove to the court that he had some "justifiable reason" for omitting the claim in the prior petition. *Fleming v. Kemp,* 837 F.2d 940 (11th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1764, 104 L.Ed.2d 200 (1989); *Henry v. Wainwright,* 743 F.2d 761, 762 (11th Cir.1984).[11] These rules "reflect the effort to adjust the tension between the need to consider all nonfrivolous claims and the need to prevent manipulation and obstruction of judicial proceedings by successive petitions." *Jones v. Estelle,* 722 F.2d 159, 164 (5th Cir.1983), *cert. denied,* 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984).

■ Whether a second or subsequent petition constitutes an abuse of the writ—i.e., whether the petitioner's conduct was the result of inexcusable neglect, or whether he has shown some justifiable reason for his failure to raise the claim earlier—is left to the sound discretion of the district court. *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1079; *Darden v. Dugger,* 825 F.2d 287 (11th Cir. 1987) (successive petition), *cert. denied,* — U.S. ——, 108 S.Ct. 1125, 99 L.Ed.2d 285 (1988); *Allen v. Newsome,* 795 F.2d 934 (11th Cir.1986); *Humphrey v. United States,* 766 F.2d 1522 (11th Cir.1985); *Potts v. Zant,* 638 F.2d at 741; Sec. 2254 Cases R. 9 advisory committee's note ("The bar set up by subdivision (b) is not one of rigid application, but rather is within the discretion of the courts on a case-by-case basis."). *See also Stephens v. Kemp,* 464 U.S. 1027, 1029–30, 104 S.Ct. 562, 563, 78 L.Ed.2d 370 (1983) (Powell, J., dissenting from grant of stay of execution) ("consideration of abuse normally is left to the 'discretion of federal

trial judges' "); *Jones v. Estelle,* 722 F.2d at 165. It is proper to leave such questions to the discretion of the district courts: "[T]heirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits." *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1079.

Yet discretion in such matters is not unfettered. The district court must exercise its discretion within certain guidelines, otherwise we run the risk that courts will engage in "the exercise not of law but of arbitrariness." *Brown v. Allen,* 344 U.S. 443, 497, 73 S.Ct. 397, 441, 97 L.Ed. 469 (1953) (opinion of Frankfurter, J.) (quoted in *Kuhlmann v. Wilson,* 106 S.Ct. at 2622 (plurality opinion)).[12]

### B.

■ The outer limits of the district court's discretion may be readily ascertained. If the petitioner knowingly and deliberately withheld the claim from a prior petition, then he has abused the writ. *Antone v. Dugger,* 465 U.S. 200, 104 S.Ct. 962, 79 L.Ed.2d 147 (1984) (per curiam) (denial of petition for certiorari and application for stay of execution); *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924); Sec. 2254 Cases R. 9 advisory committee's note ("Thus, for example, if a petitioner deliberately withholds one of two grounds for federal collateral relief at the time of filing his first application ... he may be deemed to have waived a hearing on a second application presenting the withheld ground." (quoting *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1078)). *See also*

11. "Excusable neglect," "justifiable reason," or the more generic "conduct that does not constitute an abuse of the writ" are simply different ways of saying the same thing. Neither phrase provides a substantive standard to guide courts; instead, that standard is developed through the case law under the equitable principles that inspire the abuse of the writ doctrine.

12. Elsewhere, Justice Frankfurter observed:
Here as elsewhere in matters of judicial administration we must attribute to them the good sense and sturdiness appropriate for men who wield the power of a federal judge.

Certainly, we will not get these qualities if we fashion rules to the contrary. But it is important, in order to preclude individualized enforcement of the Constitution in different parts of the Nation, to lay down as specifically as the nature of the problem permits the standards or directions that should govern the District Judges in the disposition of applications for habeas corpus by prisoners under sentence of State Courts.
*Daniels v. Allen,* 344 U.S. 443, 501–02, 73 S.Ct. 437, 443, 97 L.Ed. 469 (1953).

*McLaughlin v. Gabriel*, 726 F.2d 7 (1st Cir.1984).

Conversely, a petitioner may present a claim in a successive petition based upon a new rule of law that is to be applied retroactively. *Fleming v. Kemp*, 837 F.2d 940 (11th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1764, 104 L.Ed.2d 200 (1989); *McCorquodale v. Kemp*, 829 F.2d 1035 (11th Cir.), *cert. denied*, 483 U.S. 1055, 108 S.Ct. 32, 97 L.Ed.2d 818 (1987). A petitioner may also raise in a subsequent petition a claim based on facts that were not known when he prosecuted his prior habeas petition. *Ford v. Strickland*, 734 F.2d 538 (11th Cir.1984); Sec. 2254 Cases R. 9 advisory committee's note ("There are instances in which petitioner's failure to assert a ground in a prior petition is excusable. A retroactive change in the law and newly discovered evidence are examples."). *See also Harris v. Pulley*, 852 F.2d 1546 (9th Cir.1988); *Nell v. James*, 811 F.2d 100 (2d Cir.1987).

Similarly, a petitioner may present a claim in a successive petition based on facts that were known to him when he filed his prior petition, if he was not aware that those facts constituted grounds for federal habeas relief. *Booker v. Wainwright*, 764 F.2d 1371 (11th Cir.1985); *Haley v. Estelle*, 632 F.2d 1273 (5th Cir.1980); *Mays v. Balkcom*, 631 F.2d 48 (5th Cir.1980). *See also Nell v. James*, 811 F.2d 100 (2d Cir.1987); *Passman v. Blackburn*, 797 F.2d 1335 (5th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1609, 94 L.Ed.2d 794 (1987). This is simply another illustration of the equitable nature of the abuse of the writ doctrine. A

petitioner who does not know that certain facts constitute a ground for federal habeas relief is not seeking to "vex, harass, or delay" by failing to raise that ground, and has done nothing to disentitle himself from seeking federal habeas relief.

In the instant appeal, the district court found that Gunn fell into this category of excusable neglect. Taking into account Gunn's pro se status at the time he filed his first petition and the obscure and technical nature of the legal claim involved, the court found that Gunn had not abused the writ because he had not known that the jury instruction constituted a ground for federal habeas relief.[13] We must now decide whether a district court, in exercising its sound discretion, may properly consider the status of the petitioner—pro se or counseled—and the subtlety of the legal question involved, when determining if the petitioner abused the writ.[14]

Whether a court may consider the status of the petitioner at the time he filed his prior habeas petition in turn depends on the standard of knowledge by which we judge the habeas petitioner. If we were to apply the same standard of knowledge to a pro se petitioner as we do to a counseled petitioner, then the petitioner's status would be irrelevant. On the other hand, if we judge the petitioner by either a subjective standard, focusing our inquiry on the petitioner's actual knowledge at the time he filed the prior petition, or by an objective, reasonable person, standard, then a court should take into account the petitioner's status. Thus, we turn to the question of which standard of knowledge—subjective, objective, or counseled—we attribute to a

---

**13.** The relevant portion of the district court's order is as follows:

> To find an abuse of the writ for the presentation of new claims, the Court must find that the petitioner intentionally withheld those grounds from the prior petition or that his neglect in not presenting them was inexcusable. *Moore v. Zant*, 734 F.2d 585, 590 (11th Cir.1984). However, "[i]f the petitioner is able to present some justifiable reason explaining his actions, reasons which make it fair and just for the trial court to overlook allegedly abusive conduct, the trial court should address the successive petition." *Potts v. Zant*, 638 F.2d 727, 741 (5th Cir. Unit B

1981). In light of the petitioner's *pro se* status and in light of the fact that *Francis* was decided after Gunn's first habeas petition, the Court finds that the petitioner has not abused the writ.

**14.** We note that our discussion here is limited to the question of whether a petitioner has abused the writ. Because we conclude that the district court was within its discretion in determining that Gunn did not abuse the writ, we do not reach the entirely separate question of whether the ends of justice would be served by entertaining the petition had Gunn in fact abused the writ.

pro se petitioner at the time he prosecuted his prior pro se petition.

## C.

We need not dwell long on the use of a subjective test of the petitioner's knowledge at the time he prosecuted his prior writ pro se, for our case law makes clear that such an inquiry is the first step in any abuse of the writ analysis.

As noted above, a petitioner who deliberately and knowingly withholds a ground for relief has abused the writ. We have recognized that for a petitioner to know of a ground for relief he must know both the facts underlying that ground *and* the legal significance of those facts, i.e. that those facts constitute a legal ground for relief. This is simply a subjective test: Did the petitioner know of the facts and did he know that they might provide a legal basis for federal habeas relief. If the petitioner actually knew both, yet did not assert the ground for relief in the prior petition, then he must meet a very heavy burden indeed before the court may excuse his omission.

## D.

■ An inquiry into the subjective knowledge of the petitioner is unquestionably the first step, but it is not the only step. For just as a petitioner's deliberate affirmative conduct "may disentitle him to the relief he seeks," *Sanders,* 373 U.S. at 17, 83 S.Ct. at 1078, so too will his unreasonable inaction. A petitioner who reasonably should have known of certain facts, or that certain facts constitute legal grounds for federal habeas relief, stands in the same position before the court as one who did know but unreasonably did not present the claim in a prior petition, or delayed unreasonably before presenting it.[15] *See Stephens v. Kemp,* 469 U.S. 1043, 105 S.Ct. 530, 83 L.Ed.2d 417 (1984) (Brennan, J., dissenting from denial of certiorari) ("For 'newly discovered evidence' by definition

always existed at an earlier time; the inquiry, rather, is whether the petitioner *reasonably* either did not know about it or could not have presented it") (emphasis added); *Moore v. Kemp,* 824 F.2d 847, 862 (11th Cir.1987) (in banc) (Tjoflat, J., concurring in part and dissenting in part) ("Whether a petitioner's failure to assert his claim in an earlier habeas proceeding will depend, of course, on the reasonableness of his conduct under the circumstances.... [T]he court may deem a pro se petitioner to have waived his claim if ... a reasonable person standing in his shoes could have brought the claim."), *vacated and remanded,* — U.S. ——, 109 S.Ct. 1518, 103 L.Ed.2d 922 (1989).

We have long recognized this implicitly, when we have ruled that some claims are so basic and obvious that we have effectively presumed that the petitioner *must* have known them. *See Gay v. United States,* 816 F.2d 614, 615 (11th Cir.) (approving district court order that noted, "Nor has [petitioner] shown that his petition is based on grounds of which he could not have had knowledge by the exercise of reasonable diligence."), *cert. denied,* 484 U.S. 861, 108 S.Ct. 176, 98 L.Ed.2d 129 (1987); *Allen v. Newsome,* 795 F.2d 934, 939 (11th Cir.1986) (affirming district court conclusion that "[i]t does not require legal advice to appreciate the fact that an intentional distortion of a trial transcript, or the deliberate tampering with the evidence, if proven, amount to constitutional claims"). *See also Winfield Associates v. Stonecipher,* 429 F.2d 1087 (10th Cir.1970) ("In this type of [independent] action, it is fundamental that equity will not grant relief if the complaining party 'has, or by exercising proper diligence would have had, an adequate remedy ...'") (quoted with approval in *Booker v. Dugger,* 825 F.2d 281, 284) (11th Cir.1987) (abuse of the writ case), *cert. denied,* — U.S. ——, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1988)). This is simply another way of saying that if the peti-

---

**15.** Indeed, we are not introducing anything new to federal habeas procedure. Under Rule 9(a) courts must conduct the very same inquiry into whether the petitioner knew or reasonably should have known of the availability of a ground for relief. Court's will find it no more difficult to make this determination under Rule 9(b) than they do now under Rule 9(a). *See supra* note 4.

tioner did not know of the claim his lack of knowledge was unreasonable, and will not be an excuse.

We note that the Fourth and Fifth Circuits have come to the opposite conclusion, and ruled that a court's inquiry under Rule 9(b) is limited—in the case of the pro se petitioner—to his actual knowledge at the time he prosecuted his prior petition. *Miller v. Bordenkircher*, 764 F.2d 245 (4th Cir.1985); *Passman v. Blackburn*, 797 F.2d 1335 (5th Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1609, 94 L.Ed.2d 794 (1987). Nevertheless, we disagree, and conclude that the equitable principles of the abuse of the writ doctrine also permit a court to inquire into the reasonableness of the petitioner's prior lack of knowledge.

An objective standard has the salutary effect of requiring petitioners to be diligent and bring their claims in their first petition, an important goal for the administration of federal habeas corpus. *Cf. Galtieri v. Wainwright*, 582 F.2d 348 (5th Cir.1978). Without holding prisoners to a standard of reasonable diligence, petitioners would have little incentive to research and present their possible claims in one petition, thus opening the door for "needless piecemeal litigation." [16] By applying an objective standard of knowledge to a petitioner at the time of his prior pro se application for federal habeas relief, courts may properly minimize abusive conduct without unduly foreclosing the consideration of subsequent petitions that are not truly abusive.

The equitable principles of the abuse of the writ are both a sword and a shield: the abuse of the writ doctrine will not deny the petitioner his federal forum unless he has done something to disentitle himself, yet it requires that the petitioner conduct himself with reasonable diligence. The court's focus remains on the conduct of the petitioner, and whether he has done something to disentitle himself from the relief he seeks.

In applying the objective standard of knowledge to the pro se petitioner, however, courts must be careful not to foreclose pro se petitioners who have done nothing to deserve forfeiture: "Under the guise of fashioning a procedural rule, we are not justified in wiping out the practical efficacy of a jurisdiction conferred by Congress on the District Courts." *Daniels v. Allen*, 344 U.S. 443, 498–99, 73 S.Ct. 437, 442, 97 L.Ed. 469 (1953).

### E.

The state urges us to hold pro se petitioners to a still higher standard. The state would have us cut abuse of the writ loose from its equitable origins, and instead adopt a rule that pro se petitioners should be held to the same standard of knowledge as a lawyer. Mindful that "the importance of the writ necessit[ates] that it not lose its effectiveness in a procedural morass," *Price v. Johnston*, 334 U.S. at 269, 68 S.Ct. at 1052, and mindful of the fairness implicit in equitable doctrines, we reject the state's argument.

If Gunn had been counseled when he filed his prior habeas petition, then we would attribute to Gunn the knowledge of his counsel at the time the first petition was filed. *E.g., Ritter v. Thigpen*, 828 F.2d 662 (11th Cir.1987). That is to say, our inquiry as to whether the petitioner knew whether certain facts constitute a grounds for legal relief would change to whether his counsel knew or should have known.[17] The Supreme Court has ruled that *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct.1965, 85 L.Ed.2d 344 (1985) was merely an application of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and thus did not represent a new rule of law. *Yates v. Aiken*, 484 U.S. 211, 108 S.Ct. 534, 98 L.Ed.2d 546

---

**16.** We recognize that for most petitioners the incentive of getting out of prison as soon as possible will be incentive enough to try to raise all possible claims in their first petition. Nevertheless, to the extent that some petitioners may seek to use the federal habeas mechanism to "vex, harass, or delay," the objective standard will provide an added incentive to them to consolidate all claims in one petition.

**17.** We observe a certain symmetry in the law after our decision here. An objective standard will be applied both to pro se petitioners and, as we have done in the past, to lawyers.

(1988).[18] Therefore, we would attribute to Gunn's hypothetical lawyer the constructive knowledge of the *Franklin/Sandstrom* claim. Thus, if Gunn had been counseled when he prosecuted his prior habeas petition, his failure to raise the *Franklin/Sandstrom* claim would constitute an abuse of the writ, unless he were able to present some other "justifiable reason" for omitting the claim. *E.g., Tucker v. Kemp,* 819 F.2d 978 (11th Cir.), *cert. denied,* 481 U.S. 1073, 107 S.Ct. 2472, 96 L.Ed.2d 364 (1987).

The rule that a counseled petitioner is held to a higher standard than a pro se petitioner does not supplant the abuse of the writ doctrine. Instead, it places "the elemental role of counsel in our adversary system" in the context of the equitable abuse of the writ doctrine. *Jones v. Estelle,* 722 F.2d at 167. As the Fifth Circuit has observed, it is "inevitable that our inquiry into excuse for omitting a claim from an earlier writ will differ depending upon whether petitioner was represented by counsel in the earlier writ prosecution." *Id.*

The salient fact of this appeal, however, is that Gunn did not have counsel when he filed his first federal habeas petition.

■ Pro se habeas petitioners do not stand in the same position as counseled petitioners. Because habeas petitioners "are often unlearned in the law and unfamiliar with the complicated rules of pleading," we do not "impose on them the same high standards of the legal art which we might place on the members of the legal profession." *Price v. Johnston,* 334 U.S. at 292, 68 S.Ct. at 1063. Accordingly, we have never wavered from the rule that courts should construe a habeas petition filed pro se more liberally than one drawn up by an attorney. *Mays v. Balkcom,* 631 F.2d at 51 ("A pro se applicant will more than likely not be aware of all the possible sets of facts which could result in a grant-

ing of relief"); *Golden v. Newsome,* 755 F.2d 1478 (11th Cir.1985); *Booker v. Wainwright,* 764 F.2d 1371 (11th Cir.), *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985); *Williams v. Griswold,* 743 F.2d 1533 (11th Cir.1984); *Roberts v. Wainwright,* 666 F.2d 517 (11th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982). Nor will we do so now.

Acknowledging our rule that pro se petitioners will not be treated the same as counseled petitioners, the state argues that we should limit that rule to how courts construe pleadings. Janus-like, the state would have us recognize that pro se petitioners are not the same as lawyers—and thus should not be held to the same standards as lawyers when it comes to the rules of pleadings—while at the same time denying that very truth with respect to knowledge of the substantive law. Such a rule would be untenable.

We do not hold pro se petitioners to the same standards as counseled petitioners because "[a] pro se applicant will more than likely *not* be aware of all the possible sets of facts which could result in a granting of relief by habeas corpus." *Mays v. Balkcom,* 631 F.2d at 51 (emphasis added). This is no less true when it comes to whether a pro se petitioner should be held to know that certain facts constitute a legal ground for federal habeas relief. Therefore, we construe pro se petitions liberally "to make [the writ] effective for unlettered prisoners." *Darr v. Burford,* 339 U.S. 200, 203, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950).

Moreover, the equitable origins of the abuse of the writ doctrine necessitate some level of individualized inquiry into the knowledge and conduct of the petitioner. As we have discussed above, we believe it is consistent with this that the petitioner be held to an objectively reasonable standard. It is entirely inconsistent with those same equitable principles, however, to suggest that courts should impute the knowledge of a lawyer to a pro se petitioner. We will

---

**18.** The question of whether a decision represents a new rule of law is very different from that of whether a reasonable person would know that certain facts present a ground for relief. Thus, the fact that *Franklin* did not con-

stitute new law does not have any bearing on the question of whether a reasonable lay person would know that a *Franklin*-type jury instruction violates the constitution.

not so distort the law as to articulate the rule that a petitioner knowingly forgoes something that he does not know about, nor with reasonable diligence could have discovered. We take some solace from the observation that, until now, no court has even considered the state's view a credible alternative.

■ Therefore, in determining whether a pro se petitioner has abused the writ, we do not attribute to the pro se petitioner the knowledge of a lawyer.

### F.

With this in mind, we turn to the case at hand. The district court recognized that Gunn had proceeded pro se when he filed his prior petition. Thus, the court did not impute the knowledge of a lawyer to Gunn. Instead, the court looked at the nature of the substantive legal claim involved and found that it was so complex that Gunn's failure to raise it in his prior petition was not an abuse of the writ.[19] Viewed in the analytical framework we have outlined above, the district court concluded that Gunn's neglect in raising the *Sandstrom/Franklin* claim was excusable because he did not know, nor should he reasonably have known, that the jury instruction on intent constituted a legal ground for relief.[20]

■ We cannot say that the district court erred. The district court's factual finding that a reasonable person who read the jury instruction in question would not realize that it violates the Constitution, and

thus could be a legal basis for federal habeas relief, is not clearly erroneous. Eminently reasonable jurists read just such a charge and found no constitutional violation. *See Francis v. Franklin,* 471 U.S. at 333, 105 S.Ct. at 1981 (Rehnquist, J., joined by Burger, C.J., and O'Connor, J., dissenting); *Skrine v. State,* 244 Ga. 520, 260 S.E.2d 900 (1979) (Georgia Supreme Court unanimously rejects constitutional challenge to *Franklin* charge). It would be odd indeed if we were to hold that the court had erred in finding that a pro se petitioner was not reasonable in reaching the same conclusion as that reached by justices of the Georgia Supreme Court and of the United States Supreme Court.[21]

Having found that Gunn did not know of the availability of the *Sandstrom* claim, and that he should not reasonably be held to have known of the claim, the district court exercised its equitable discretion and decided to entertain Gunn's successive petition. We cannot say that the court's decision was an abuse of its sound discretion.

Had the district court come to a conclusion other than the one it did, we cannot say that that decision would have been an abuse of discretion either. There will always be cases such as this one: cases that fall within the range of the court's discretion, and about which reasonable minds may differ.[22] It remains the primary duty of the district courts to determine such matters.

The state posits that because Gunn could recognize the legal significance of *Frank-*

---

19. *See* supra note 13.

20. Had the district court judged Gunn solely by his subjective knowledge, then the court would have stopped after it found as a fact that Gunn did not know of the existence of the *Franklin/Sandstrom* claim. On the other hand, if the court had attributed to Gunn the same standard of knowledge as that of a lawyer, then he would not have observed that Gunn was pro se, nor would he have had cause to consider the complexity of the *Franklin* claim. Thus, the court applied the objective test: once it found that Gunn was pro se when he prosecuted his prior petition, the court proceeded to the question of whether a reasonable person would have realized that a *Franklin*-type jury instruction was unconstitutional.

21. We do not suggest that a petitioner is excused from omitting a claim every time he can point to one court opinion or one dissent. Each case depends on its own unique set of facts, and we cannot articulate bright-line rules. Such fact-specific determinations are the province of the district courts.

22. *Cf. Kuhlmann v. Wilson,* 106 S.Ct. at 2639 (Stevens, J., dissenting) ("I believe that the District Court did not abuse its discretion in entertaining the petition in this case, although I would also conclude that this is one of those close cases in which the District Court could properly have decided [not to entertain the petition]").

*lin*, he must also have been able to recognize the legal significance of *Sandstrom*, which was decided well before he filed his first pro se petition, and that *Sandstrom* would apply to his case. This is simply a challenge to the district court's factual finding that Gunn did not in fact know of the legal significance of the jury charge given in his trial. This argument is based merely on the state's conjecture, and is not persuasive.

If we were to adopt the state's reasoning we would create a Catch–22 for pro se petitioners: any petitioner who subsequently realizes that he has a legal grounds for federal habeas relief will be barred from raising that ground, because, if he was smart enough to recognize it at all, he should have recognized it originally. In Alice-in-Wonderland fashion, only those prisoners who *do not* realize that they may have a legal basis can present that basis— of which they are, alas, unaware—in federal court. " 'The great writ of liberty' ought not to be treated as though we were playing a game." *Darr v. Burford*, 339 U.S. at 225, 70 S.Ct. at 601 (Frankfurter, J., dissenting).

█ In summary, a petitioner abuses the writ when he raises in a subsequent petition a claim based on facts known when he filed his prior petition pro se only if he knew or reasonably should have known that those facts constituted a legal ground for federal habeas relief. In this appeal, we hold that the district court did not err in finding that a reasonable person would not have realized that the jury instruction given on the issue of intent violated the Constitution, nor did the district court abuse its sound discretion in determining to entertain the petition once it found that the petitioner's omission was the result of excusable neglect.

## III. SANDSTROM/FRANKLIN ERROR

### A.

Having found that Gunn did not abuse the writ, the district court turned to the merits of the petition, as we do now. The court concluded that the jury instructions taken as a whole unconstitutionally shifted the state's burden of proof on the issue of intent to Gunn. We review this question *de novo*. See *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct.1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

█ In *Sandstrom*, the Supreme Court unanimously ruled that the jury instruction "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" is unconstitutional. Because the Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged," *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368 (1970), the state may not shift to the accused the issue of intent, effectively requiring the accused to prove lack of intent, when intent is an element of the crime with which he has been charged. *Sandstrom*, 442 U.S. at 521, 99 S.Ct. at 2458.

In *Francis v. Franklin*, the Court faced a constitutional challenge to a jury instruction that presumed intent, but explicitly informed the jury that the presumption "may be rebutted." At Franklin's trial the Georgia Superior Court judge gave the following instruction:

> The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is the Jury, may find criminal intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

*Franklin*, 471 U.S. at 311, 105 S.Ct. at 1969–70. A majority of the Court ruled that such an instruction, if not cured elsewhere in the jury instructions, violates the Constitution because it may appear to a juror to shift the burden on the issue of

intent to the accused. The Court concluded:

> Because a reasonable juror could have understood the challenged portions of the jury instruction in this case as creating a mandatory presumption that shifted to the defendant the burden of persuasion on the crucial element of intent, and because the charge read as a whole does not explain or cure the error, we hold that the jury charge does not comport with the requirements of the Due Process Clause.

*Id.* at 325, 105 S.Ct. at 1977.

### B.

■ In the instant appeal, another Georgia Superior Court gave an instruction in part identical to the instruction found offensive to the Constitution in *Franklin.* The court instructed the jury in part as follows:

> A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but this presumption may be rebutted. A person will not be presumed to act with criminal intent but you the jury may find such intention upon consideration of the words, conduct, demeanor, motive and all other circumstances connected with the act for which the accused is prosecuted.

Nowhere in the instructions did the court explain or cure the burden-shifting error it had made. Thus, because intent is an essential element of malice murder, the jury instruction impermissibly shifted the state's burden on the issue of intent to Gunn in violation of the Due Process Clause.

### IV. HARMLESS ERROR

Although we have found that the jury instruction on intent unconstitutionally shifted the state's burden, we must determine whether the impermissible jury instruction was harmless error. *Rose v. Clark,* 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). Under *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), "before a constitutional error can be declared harmless, the court

must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828.

We stand in the same position as the district court in determining whether, upon reviewing the record as a whole, the constitutionally infirm jury instruction is harmless beyond a reasonable doubt. Thus, our review of this question is plenary. *See Rose v. Clark,* supra; *Chapman v. California,* supra.

■ A *Sandstrom/Franklin* error is harmless "where the erroneous instruction was applied to an element of the crime that was not at issue in the trial," *Bowen v. Kemp,* 832 F.2d 546, 548 (11th Cir.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 1247, 99 L.Ed.2d 445 (1988), or where the evidence as to the element of the crime subject to the burden-shifting instruction is overwhelming. *Brooks v. Kemp,* 762 F.2d 1383, 1390 (11th Cir.1985) (in banc), *vacated and remanded,* 478 U.S. 1016, 106 S.Ct. 3325, 92 L.Ed.2d 732 (1986), *reinstated,* 809 F.2d 700 (11th Cir.) (in banc), *cert. denied,* 483 U.S. 1010, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1987).

■ As we noted above, intent was an essential element of the crime for which Gunn was being prosecuted. A defendant may, by claiming self-defense, concede that he intended the natural and probable consequences of his acts, *see Holloway v. McElroy,* 632 F.2d 605, 618 (5th Cir.1980), *cert. denied,* 451 U.S. 1028, 101 S.Ct. 3019, 69 L.Ed.2d 398 (1981), but this is not always true. For example, a defendant may concede that he intended to kill the victim, or cause him grievous bodily injury, albeit in self-defense. In such a case, the defendant will have conceded the ultimate issue that is the subject of the impermissible burden-shifting jury instruction, and the *Sandstrom* error would be harmless. *E.g., Stephens v. Kemp,* 846 F.2d 642, 662–64 (11th Cir.) (Tjoflat, J., concurring), *cert. denied,* — U.S. ——, 109 S.Ct. 189, 102 L.Ed.2d 158 (1988).

Here, Gunn testified that he intended not to cause Williams's death, but merely to stop Williams long enough so that he

(Gunn) could "get gone." Thus, the issue of whether Gunn intended that the death of Williams be the natural and probable consequences of his acts was not conceded by way of his defense, and therefore remained in the case. *See Baker v. Montgomery,* 811 F.2d 557 (11th Cir.1987); *Patterson v. Austin,* 728 F.2d 1389 (11th Cir.1984); *Mason v. Balkcom,* 669 F.2d 222, 227 (5th Cir. Unit B 1982), *cert. denied,* 460 U.S. 1016, 103 S.Ct. 1260, 75 L.Ed.2d 487 (1983).[23]

Nor can we say that the evidence as to the element of intent was overwhelming. Here, while Gunn undoubtedly intended to fight Williams and to strike him with the cue stick, the evidence was not overwhelming that he struck the blow with the intent to kill Williams. Because the court instructed the jury on malice murder and on the lesser charge of manslaughter, the issue of intent was central to the jury's deliberations, and it is possible that the impermissible presumption of intent affected the jury's verdict. The jury could reasonably have concluded that Gunn intended to kill Williams, or they could just as reasonably have concluded that he did not intend to kill. Therefore, we cannot say that the error was harmless beyond a reasonable doubt.

## V. CONCLUSION

We affirm the district court's finding that Gunn had not abused the writ in failing to raise his constitutional challenge to the jury instruction on the issue of intent in his first pro se federal habeas petition. The district court did not abuse its discretion in concluding that Gunn did not abuse the writ because a reasonable lay person would not have recognized that the challenged jury instruction constituted a basis for federal habeas relief. Turning to the merits of Gunn's claim, the jury instructions, taken as a whole, impermissibly shifted the burden on the issue of intent to Gunn, in violation of the Due Process Clause. Furthermore, because intent was still an issue in the trial, and because the evidence that Gunn intended to kill Williams was not overwhelming, the constitutionally impermissible jury instruction was not harmless error. Accordingly, the district court's order granting the writ of habeas corpus unless the state retries Gunn within 120 days is AFFIRMED.

RONEY, Chief Judge, concurring:

I concur in the result reached by the opinion of Judge Kravitch, and much of what is said therein. I also agree with much of what is said in Judge Hill's and Judge Edmondson's dissenting opinions. There is no doubt the present federal habeas corpus law presents difficulties in terminating litigation. Following the logic and the rationale of the United States Supreme Court decisions at this time, however, I am compelled to conclude that as the law now stands, Judge Kravitch has decided this case the way it must be decided by this Court. In my judgment, *pro se* litigants should not be accorded the deferential treatment now given them by the decided cases, but to deny the distinction here made between *pro se* and counselled habeas corpus petitioners would be inconsistent with what is already on the books.

HILL, Circuit Judge, dissenting, in which FAY, VANCE, COX, Circuit Judges, and HENDERSON, Senior Circuit Judge, join:

The court today holds that a new indulgence is to be tendered to the pro se litigant. We have, heretofore, construed his pleadings liberally. Today we hold that the consequences of pro se litigation shall not fall upon the pro se litigant as they do upon the counseled litigant.

This holding is made in a second round of federal habeas corpus litigation in the fed-

---

**23.** Indeed, *Sandstrom* involved just this situation:

> [W]hether the crime was committed purposely or knowingly is a fact necessary to constitute the crime of deliberate homicide. Indeed, it was the lone element of the offense at issue in Sandstrom's trial, as he confessed to causing the death of the victim, told the jury that knowledge and purpose were the only questions he was controverting, and introduced evidence solely on those points.

*Sandstrom,* 442 U.S. at 521–22, 99 S.Ct. at 2457–58.

eral courts. It is not needed. It is not wise. I respectfully dissent.

The judicial systems of the nation and of the states have long been frustrated by unending litigation preventing finality in the administration of criminal justice. A state criminal defendant is afforded many rights to prevent an unjust conviction. Representation by counsel, trial by jury, confrontation and cross-examination of witnesses, compulsory process for the production of testimony and other evidence, presumption of innocence and the burden upon the prosecutor to prove guilt beyond a reasonable doubt are among a defendant's protections. If convicted, a defendant may appeal; should the appeal be unsuccessful, a defendant has the right to petition the United States Supreme Court for a writ of certiorari directed to the highest court of the state. Great care is taken to see to it that a defendant is protected and that convictions are proper.

Nevertheless, collateral attack upon such convictions follows collateral attack; a judgment of guilt in a criminal case may, apparently, never be said to be final as long as the convicted defendant lives. The House Report accompanying the 1966 revisions of the procedures applicable to review by lower federal courts of habeas corpus petitions by state prisoners recognized that "[w]hile in only a small number of these applications have the petitioners been successful, they nevertheless have not only imposed an unnecessary burden on the work of the Federal courts but have also greatly interfered with the procedures and processes of the State courts by delaying, in many cases, the proper enforcement of their judgments." H.R.Rep. No. 1892, 89th Cong., 2d Sess. 5 (1966). Courts, judges, and scholars likewise have referred to the frustrations inherent in this state of affairs. *See, e.g., Kuhlmann v. Wilson,* 477 U.S. 436, 450–54, 106 S.Ct. 2616, 2625–27, 91 L.Ed.2d 364, 378–81 (1986) (plurality opinion); *Barefoot v. Estelle,* 463 U.S. 880, 887, 103 S.Ct. 3383, 3391–92, 77 L.Ed.2d 1090, 1100 (1983); *Thigpen v. Smith,* 792 F.2d 1507, 1513 (11th Cir.1986); Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev.

142 (1970); *see generally, Teague v. Lane,* — U.S. ——, 109 S.Ct. 1060, 1075, 103 L.Ed.2d 334 (1989) ("the principle of finality ... is essential to the operation of our criminal justice system[;][w]ithout finality, the criminal law is deprived of much of its deterrent effect.") Federal judges appear to seek laws enacted by the legislative branch which may permit us, in appropriate cases, to reach finality. However, when such laws are given to us, we tend to reject them out of hand. Our yearning for finality does not often equal our delight in insinuating our own ideas of right and wrong into the judgments of state courts. We tip our hat to finality, but create most ingenious contrivances to avoid it. I have taken note of this tendency on some past occasions in which I have felt the need to remark that "[i]t may be that what we do speaks so loudly that no one will hear what we say." *See Rhodes v. Interstate Battery System of America,* 722 F.2d 1517 (11th Cir.1984) (Hill J., dissenting); *Wilson v. First Houston Investment Corp.,* 566 F.2d 1235, 1244–45 n. 1 (5th Cir.1978) (Hill J., dissenting), *vacated,* 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979).

We have, here, an example. Congress recognizes that there can be no strict application of the doctrine of res judicata to habeas corpus cases. There must not be any *absolute* rule of law that provides *absolute* finality in cases of deprivation of life or liberty through the operation of the criminal laws. That is simply because, should an innocent person be in custody or in jeopardy of the execution of a death sentence, there must be an opportunity for that person to repair to a court of justice for relief. Were that not the case, there would be no principled reason for not applying res judicata to these collateral attack cases as is done in other litigation.

Therefore, when Congress sought to give us an opportunity to reach finality in the administration of criminal justice, it did not enact the doctrine of res judicata into habeas corpus rules, but it did provide for the application of the considerations which inform the doctrine of res judicata in collateral attack cases insofar as that can be

done without risking the loss of the "safety valve" for the innocent, described above. Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides for the dismissal of a second or successive petition if it raises only claims that were previously brought and decided on the merits, or it raises claims for the first time that previously were available and the judge finds that the failure of the petitioner to assert those grounds in a prior petition constitutes an abuse of the writ.[1] Rule 9(b), Successive Petitions, Rules Governing Section 2254 Cases, 28 U.S.C. fol. § 2254 (1982).

One need not speculate as to why these provisions were added. The reasons were clearly stated in the legislative history of the amendments to sections 2244 and 2254. Both the Senate Report and the House Report state that the purpose of the new text was to provide for "a qualified application of the doctrine of res judicata." S.Rep. No. 1797, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 3663, 3664; H.R.Rep. No. 1892, 89th Cong., 2d Sess. 5–6 (1966). The Senate Report adds that the bill "seeks to alleviate the unnecessary burden [of an increasing number of petitions filed in federal court] by introducing a greater degree of finality of judgments in habeas corpus proceedings." S.Rep. No. 1797, 89th Cong., 2d Sess. *reprinted in* 1966 U.S.Code Cong. & Admin. News 3663, 3664. Congress heard and responded to our expressed alarm at endless collateral litigation.

There is no need to tarry long to demonstrate that, but for an exception discovered by the court today, Mr. Gunn's second petition would be an abuse of the writ. The only issue upon which the court orders relief is the contention that a jury instruction on intent had created a presumption of intent to kill and thus violated the rule of law laid down by the Supreme Court in

*Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Sandstrom* was decided on June 18, 1979. Two days later, petitioner was convicted in the state court. In November, 1979, petitioner took his direct appeal to the Georgia Supreme Court, but he did not claim that the jury instruction on the issue of intent had impermissibly shifted part of the government's burden of proof. More than three years after *Sandstrom* was decided, Mr. Gunn brought a petition for habeas corpus in the federal district court. He again raised the issues that had been presented to the Supreme Court of Georgia in the direct appeal but did not challenge the constitutionality of the jury instructions. The district court denied relief on that petition in April, 1983. In October, 1985, more than six years after *Sandstrom* had been decided, petitioner in his initial state habeas corpus petition first challenged the burden shifting instruction. On April 1, 1986, petitioner filed his second federal petition for habeas corpus, raising, as his sole ground, the *Sandstrom* issue. The state immediately asserted that this constituted an abuse of the writ. It is this second federal petition, granted by the district court, that we consider in his appeal.

The court readily concludes that the second habeas petition raising the *Sandstrom* issue for the first time would constitute an abuse of the writ absent the exception it has discovered for petitioner. It states, "... if Gunn had been counseled when he prosecuted his prior habeas petition, his failure to raise the *Franklin/Sandstrom* claim would constitute an abuse of the writ, unless he were able to present some other "justifiable reason" for omitting the claim. *E.g., Tucker v. Kemp,* 819 F.2d 978 (11th Cir.1987), *cert. denied,* 481 U.S. 1073, 107 S.Ct. 2472, 96 L.Ed.2d 364 (1987)."

The court has discovered that a petitioner's pro se or counseled status is crucial.[2]

---

1. Rule 9(b) restates the provisions of 28 U.S.C. § 2244(b).

2. In holding petitioner's neglect to be excusable, the court states that "[i]t would be odd indeed to rule that it was an abuse of the court's discretion to find that a pro se petitioner was not reasonable in reaching the same conclusion as

that reached by justices of the Georgia Supreme Court and of the United States Supreme Court." This reasoning is flawed for it leads logically to a conclusion that lawyers, and thus counseled petitioners, who failed to recognize the constitutional claim at issue in the interim between *Sandstrom* and *Franklin* also should be excused

In so doing, the court comes to the rather astonishing conclusion that a litigant is more responsible for what his agent fails to do than for what he fails to do himself. If a petitioner has a lawyer who acts for him in litigation, the petitioner is responsible for the negligence of the lawyer in omitting a claim in his first petition, thereby rendering his second petition abusive. However, if the litigant acts for himself and negligently omits a claim in the first petition, he in many cases would not be held responsible for that omission and may freely litigate the matter in a second petition.

The court's opinion speaks of the equities inherent in habeas corpus litigation and, facially, states reasons that appear sufficient for giving special consideration to the pro se litigant in this context.[3] If the first habeas petition in this case were ambiguous as to whether or not it was raising a particular issue, we might construe it liberally, finding that the issue was raised. However, what the court does today is hold that the consequences of litigation are not the same for one who litigates pro se and one who litigates through counsel.

Facially, it may appear "fair" to allow pro se litigants in habeas corpus, who are presumably ignorant of the law and the court procedures, to do what would otherwise be an abuse of the writ if represented by counsel. However, a brief reflection demonstrates that this will not do. The court adopts a purportedly "objective" standard through which a district court does not look to the actual knowledge of a petitioner at the time of his prior petition but rather "inquire[s] into the reasonableness of the petitioner's prior lack of knowledge." In inquiring into the reasonableness of a petitioner's prior lack of knowledge, would not a court consider, in addition to pro se or counseled status, such factors as intelligence, litigation experience, and the existence and quality of assistance in determining the culpability *vel non* of a petitioner? Would not a petitioner who has become schooled in habeas corpus law be treated less gently than one who has no knowledge at all of collateral attack litigation? Similarly, if a pro se litigant has been acting with the guidance and assistance of a "writ writer" in the penal institution, might he not be held accountable as would one who has been represented by counsel? At any rate, would it not be necessary for the court to determine the skill of the writ writer representing or counseling the particular petitioner, comparing the writ writers' skill in collateral attack litigation with the skills of the average attorney? If such skill measured up, would the petitioner not be held as accountable as a petitioner represented by an average attorney?

The permutations will be almost endless once we depart from treating a litigant as a litigant and begin treating a pro se and a represented petitioner differently for the purpose of ascertaining the consequences of litigation. There are so many facets of the posture of the litigant that ought to be inspected that the notion of abuse of the writ will probably disappear—just when the administration of criminal justice in this country most desperately needs it.[4]

I respect the right of a litigant to represent himself or herself. Pro se pleadings should be liberally construed to insure that the litigant has access. When the litigant has availed himself of this right, the conse-

---

unless the court has concluded that lawyers should know more than justices of the Supreme Court of Georgia and the United States Supreme Court. Nevertheless, as depicted above, the court states that constructive knowledge of a *Sandstrom/Franklin* claim would be attributed to a lawyer, and thus to a represented petitioner. I submit that there is no real defensible basis for differentiating between counseled and pro se petitioners.

**3.** This case, unlike the ones cited below, does not involve a court liberally construing a *pro se*

pleading to help a *pro se* petitioner have the same access to the courts that he would have had if he had been represented. *Golden v. Newsome,* 755 F.2d 1478, 1480 (11th Cir.1985); *Phillips v. Mashburn,* 746 F.2d 782, 784 (11th Cir. 1984); *Williams v. Griswald,* 743 F.2d 1533, 1542–43 (11th Cir.1984); *Roberts v. Wainwright,* 666 F.2d 517, 519 (11th Cir.1982), *cert. denied,* 459 U.S. 878, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982).

**4.** "We have met the enemy and it is us!" (apologies to Pogo).

quences should be the same for him and for one who is represented.

I respectfully DISSENT.[5]

EDMONDSON, Circuit Judge, dissenting:

Judge Hill's opinion makes good points, but I want to add a little. In this case, our job is to interpret Rule 9(b) of the Rules Governing Section 2254 Cases. As I understand it, Rule 9(b) is simple and provides federal courts with an objective standard to apply in dealing with second petitions for habeas corpus by state prisoners.

If a state prisoner files a petition raising a claim that was available but not raised in his earlier petition, the prisoner has abused the writ.[1] *See Kuhlmann v. Wilson*, 477 U.S. 436, 444 n. 6, 106 S.Ct. 2616, 2622 n. 6, 91 L.Ed.2d 364 (1986) (plurality opinion). A claim is available whenever an arguable basis in fact and in law exists for it. *Cf. Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434 (1986); *Neitzke v. Williams*, — U.S. —, 109 S.Ct. 1827, 1831, 104 L.Ed.2d 338 (1989); *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967). That some or even all courts might ultimately resolve the argument against the petitioner's contention does not mean that the claim is unavailable.[2]

When a court faces an abuse of the writ, the court's discretion comes into play; and the court may decline to dismiss the petition. In general, petitions abusing the writ should be dismissed: Rule 9(b) was intend-ed to lead to substantially more finality in the disposition of habeas corpus petitions by state prisoners in federal courts. Still, a colorable showing by a petitioner that he was in fact innocent would justify a court's refusal to dismiss in even the worst case of abuse of the writ; and—apart from factual innocence—a showing that some objective factor external to the petitioner and his agents blocked his effort to present an available claim earlier might justify a court's decision not to dismiss. That the first petition was filed pro se is an unsound basis for declining to dismiss, however.

Neither the Constitution nor statutes require that habeas petitioners have the assistance of legal counsel. Because the presence of legal expertise has not been made essential to participating fully in federal habeas proceedings, a petitioner's thinking and acting like a lawyer is inessential to his being bound by earlier habeas proceedings. In addition, a claim's availability—that is, whether an arguable legal basis exists for it—does not hinge on the qualities of the person looking for the claim. The claim is available or it is not. Whether a legal point is arguable or inarguable is a question of law.

The effect of *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), on jury instructions about intent in criminal cases was a live issue in the law when petitioner filed his first petition for federal habeas corpus. Petitioner left out of his first petition a claim that was then available as a matter of law. By omitting an available claim and later filing a second

---

5. I do not overlook that the court's opinion suggests that Mr. Gunn may not have been guilty of the crime—murder—for which he was convicted. This suggestion, though, comes in that part of the opinion reaching the conclusion that the jury instruction condemned in *Sandstrom/Franklin* was prejudicial in the guilt-innocence trial. If the court were suggesting that this petition presents the "colorable showing of factual innocence" referred to in *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364, 381 (1986) (plurality opinion), I assume the opinion would have said so. No claim that an abusive petition ought to be heard because it asserts such innocence was claimed in pleadings, briefs, or argument; therefore, I take it that it need not be evaluated.

1. Deliberately withholding a known claim or filing a second habeas petition only to vex, harass and delay are examples of abuse of the writ, but neither the Congress nor the Supreme Court has said that these are the exclusive ways of abusing the writ. Instead, these acts seem to be only the most obvious ways.

2. Judicial decisions rejecting a claim can show that the issue was alive at the time. *Engle v. Isaac*, 456 U.S. 107, 131 n. 41, 102 S.Ct. 1558, 1574 n. 41, 71 L.Ed.2d 783 (1982). Incidentally, *Engle* also sets out a good discussion of some costs of the Great Writ; in my view, recognition of these and other costs, especially those related to federalism, led to 28 U.S.C. section 2244(b) and Rule 9(b).

petition, he abused the writ. He asserted no ground that warranted the district court's decision to decline to dismiss the second petition for habeas relief. In the light of Rule 9(b), I would reverse the judgment of the district court.